JOHN CASPER v. STATE OF NEBRASKA.

FILED NOVEMBER 17, 1916. No. 19754.

1. Evidence examined, and *held* to support a verdict finding plaintiff in error guilty of larceny from the person.

2. Instructions examined, and *held* sufficient to describe the essential elements of that crime.

3. Criminal Law: TRIAL: INSTRUCTIONS. Where the evidence of the commission of a crime is direct and is supported by corroborative testimony, the defendant is not entitled to an instruction that, if the evidence is reconcilable with innocence upon any reasonable hypothesis, the defendant is entitled to a verdict of acquittal.

4. Larceny: CONVICTION: PROBATION. By the provisions of section 9148, Rev. St. 1913, one who has been convicted of larceny from the person may not be placed under probation by the district court.

ERROR to the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Reversed, with directions.*

*D. W. Livingston,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *Charles S. Roe, contra.*

LETTON, J.

The defendant was charged with robbery, and was convicted of larceny from the person under instructions permitting this to be done if no force was used. Sentence was suspended by the court, and defendant placed upon probation.

It is first argued that it is reversible error to submit instructions as to a crime charged, but entirely unsupported by the evidence. There can be no question of the soundness of this proposition. Its applicability here depends on whether the evidence is sufficient to establish the crime of larceny from the person, of which defendant was convicted. In substance, the evidence is as follows: Jacob Pabin, the complaining witness, is a resident of North Da-

kota. He formerly lived near Talmage in this state. A few days before Thanksgiving he returned to Talmage upon a visit. Thanksgiving Day he spent with a number of his former intimates. He visited several saloons, where he imbibed to some extent. That night he met John Casper, the defendant, whom he had previously known. Pabin testified that he was at a pool hall that night, and went from there to a garage, where he met defendant about 11 o'clock. He had not arranged for a sleeping place, and he inquired of Casper where one Watham lived, intending to spend the night there. Casper volunteered to show him where Watham lived. As they passed a vacant building Casper asked him to go inside. There was no light in the building, and he therefore refused to enter, when Casper pulled him inside. He fell, and while on the floor Casper reached into his pocket and took from him his pocketbook with a five-dollar bill and $4.50 in silver in it, and a memorandum book and some papers. After Casper let him up he went back to the pool hall, which was about a block away, where he tried to find an officer. The proprietor of the pool hall testified that Pabin was there about 9 or 10 o'clock, and that night he returned there about half past 11, looking for an officer. The sheriff testified that after Casper was arrested he took him to the building where Pabin said he was robbed to look for papers, and they found none; that afterwards defendant suggested they go back and look again; that Casper then picked up from the floor near some machinery a memorandum book and papers, which were identified by Pabin as having been taken from him. The sheriff also testified that he saw a condition indicating a scuffle upon the floor; that they then went back to the pool hall, where Casper offered to give Pabin the amount of money that had been taken from him, but Pabin refused it, unless he would admit that it was the same money he had taken, which defendant refused to do.

For the defense, defendant testified that it was about 8 o'clock in the evening when he met Pabin in the garage

and offered to show him Watham's house; that he went with him a little over a block to a point where they could see a light in the Watham house, and then left him and went home, a distance of about a mile, which he reached about 9 o'clock; that he had not been in the building Pabin described that day. Defendant's mother testified that he came into the house that night between 9 and 10 o'clock. She had gone to bed, and she gave no reasons or criteria for fixing this as the time of his arrival.

Pabin is corroborated by the keeper of the pool hall as to the time he left there to go to the garage where he met Casper, and as to the time that he returned there looking for an officer. Defendant admits he left the garage with Pabin and went near the old building with him. The marks found by the sheriff on the floor and the finding in the building by defendant of the memorandum book and papers taken from Pabin support his evidence that the money was stolen at that place. The jury had a right to consider the actions and appearance of the witnesses upon the stand and to give credence to those whose testimony they believed. They evidently disbelieved defendant. The evidence indicates that Pabin was intoxicated in some degree, but it failed to convince the jury that there was any intent to rob him by putting him in fear or overcoming him by force. There is sufficient evidence to support the verdict finding defendant guilty of larceny from the person.

It is complained that the court failed to instruct as to the essential elements of the crime of larceny from the person. The jury were told, in the words of the statute: "Whoever steals property of any value by taking the same from the person of another without putting said person in fear by threats, or by the use of force and violence, shall be deemed guilty of grand larceny." In another instruction the court said: "The putting in bodily fear with the use of force and violence is not a necessary element in the crime of larceny from the person, but the feloniously carrying away from the person with the intent of converting the property to his own use and against the owner's

100 Neb.—24

consent is necessary." These instructions sufficiently describe the elements of the crime.

Misconduct on the part of the county attorney prejudicial to defendant during the argument is charged. We find no prejudicial error in this respect. One of the objections made by the defendant to the argument was overruled, the other was sustained, and the jury were instructed to disregard any statement made not borne out by the evidence. The first statement was apparently made in response to something said by counsel for defendant.

Since the evidence in this case was direct and was supported by corroborative testimony, the defendant was not entitled to an instruction that, if the evidence is reconcilable with innocence upon any reasonable hypothesis, he is entitled to a verdict of acquittal, as in a case where the evidence is circumstantial only. 2 Thompson, Trials (2d ed.) sec. 2504.

It is urged that the court was without authority to enter the judgment which it did. There is merit in this contention. The court suspended sentence and placed the defendant upon probation. The act of 1913 (Rev. St. 1913, secs. 9145-9151), providing for the appointment of probation officers, the suspension of sentences, and placing the accused on probation, does not apply to persons convicted of certain crimes described in section 9148. Among these is "robbery or larceny of (from) the person." We find no other section of the statute conferring such power upon the district court in such a case. The order made by the court was therefore erroneous. We are reluctant to reverse the order of probation in this case, but feel compelled to obey the statute. The facts justified the order, if the law did not prohibit the exercise of such clemency by the district court in a case of this kind.

Since we find no prejudicial error previous to this order, the judgment of the district court is reversed and the cause remanded, with directions that sentence be pronounced upon the verdict, in accordance with law.

REVERSED.