(No. 5416. November 2, 1929.)

STATE, Respondent, v. SAM STEVENS, *alias* A. B. MEYER, Appellant.

[282 Pac. 93.]

336

W. H. Holden and T. C. Coffin, for Appellant.

W. D. Gillis, Attorney General, and Fred J. Babcock, Assistant Attorney General, for Respondent.

VARIAN, J.—Sam Stevens and Anna L. Stevens, his wife, were jointly informed against for the crime of obtaining money under false pretenses, under C. S., sec. 8474. After trial, the jury returned a verdict finding defendant Sam Stevens guilty as charged, and acquitting Anna L. Stevens. Motion for a new trial was denied, and Sam Stevens appeals from the judgment of conviction.

The first assignment of error goes to the sufficiency of the information to state a public offense, as raised by the general and special demurrer. Appellant contends that the information charges, "That in consideration of the said A. B. Meyer so furnishing employment to the said Karl Kass, he, the said Karl Kass, *was induced* to pay to the said A. B. Meyer the sum of $200." Standing alone, there would be some merit to appellant's contention, as this allegation, taken from the body of the information, does not relate to a "fraudulent representation of an existing or past fact." (*State v. Whitney,* 43 Ida. 745, 254 Pac. 525.) But toward the end, after stating the particulars of other false statements and representations, the information charges:

" . . . . And the said Karl Kass, then and there believing the said false and fraudulent pretenses and representations so made as aforesaid by the above named defendants, to be

true, and being deceived thereby, was induced, by reason of the said false and fraudulent pretenses and representations, so made as aforesaid, to pay to the said A. B. Meyer the sum of $200," etc.

It fairly appears from the information that appellant falsely represented himself to be a man of wealth, the owner of one million dollars' worth of Liberty bonds, and in the employ of Henry Ford, and that by reason of these false representations Kass was induced to part with $200 on promise of a job and repayment of $2,000. Taken as a whole, the information states a public offense, under C. S., sec. 8474. (*Pepper v. People,* 75 Colo. 348, 225 Pac. 846; *State v. Briggs,* 74 Kan. 377, 10 Ann. Cas. 904, 86 Pac. 447, 7 L. R. A., N. S., 278; 25 C. J., p. 594, sec. 15; 11 R. C. L., p. 832, sec. 9.)

It is contended that one cannot tell from the information whether the State claimed one or both of the defendants made the false representations, and to what extent both were "concerned" in making them. Counsel cite no authority to sustain this objection, which we think is not well taken. The facts are specifically alleged and pointed out. The proof shows that appellant made the representations, and many of them in the presence of his co-defendant who was acquitted at the trial. (C. S., sec. 8845; *State v. Curtis,* 30 Ida. 537, 165 Pac. 999.)

. Appellant offered no testimony at the trial. From the evidence it appears that Karl Kass, born in South Russia and residing at American Falls since 1908, had farmed for seventeen years, but had been engaged for three years in trucking, owned two trucks. Reads English pretty well if printed, and also if written, provided it is very plain. Appellant, under the name of Professor A. B. Meyer, carried an advertisement in the "American Falls Press," a newspaper, claiming to be a clairvoyant, palmist and spiritual medium, able to tell "names, dates, facts. Past, Present, Future. Everything you desire to find out concerning yourself or others. Regarding your business transactions," etc.;

admonishing his readers not to make any deal before consulting the "Master Mind," and generally claiming supernatural powers. Kass was advertising his trucks for sale in the same newspaper, not being able to obtain work for them, and one truck not being wholly paid for, with instalment payments about due, when he saw appellant's advertisement on August 30, 1928. The evidence discloses he was of a credulous turn of mind, believed in fortune-tellers, and on the next day went to the Carlyle Hotel in Pocatello, the address stated in the advertisement, where he met appellant, his wife not being present. At that time appellant gave Kass some "hand readings" and some printed readings, for which Kass paid him seventeen dollars. Kass mentioned his trucks, and asked if he could sell them. Appellant replied, "No, keep them. You will have some need for them." On September 6, 1928, he went again to appellant, when he saw Mrs. Stevens, who was in the outer room while appellant was busy with people in the inner room. Kass finally saw appellant, who asked him how many trucks he had, was told, and then said he (appellant) was here working for Henry Ford; that they were opening up a mine around Carey, Idaho; that they were building roads and putting in machinery; and then asked how much money Kass had in the bank, and asked for a hundred dollars. Kass evidently hesitated, and appellant asked him if he did not want to get on his feet, and promised that if Kass would give him a hundred dollars then, he would get a good job with Henry Ford with both trucks, hauling ore from the mine to Carey, Idaho, and would receive a thousand dollars back on the first of the year. Kass asked what kind of security he would give. Appellant replied that Kass would get a good job and his money back, and asked Kass, "What kind of security you get from your banker?" Kass still hesitated, and appellant said, "I will prove it to you," and called his wife in and asked her, "Who am I here for?" to which she replied, "For Henry Ford—on account of Henry Ford." Appellant wrote a check payable to A. B. Meyer for $100 on the Power County Bank, which Kass signed and delivered

to him in the Carlyle Hotel in Pocatello, Idaho, and which was afterwards cashed by appellant.

Under date of September 14, 1928, appellant wrote Kass a very friendly letter (State's Exhibit "C") in which he says in part:

" . . . . Am fearful that you will not follow my advice about that truck. I don't want you to do it because it will not prove beneficial to you if you sell it, but if you keep it, it will prove financially profitable to you later."

Kass received the letter on September 14th, and not being able to read it, went to Pocatello on the 15th and asked appellant to read it to him, who did so in the presence of appellant's wife, and told him he was worrying too much about the debt against one of the trucks, and told him he should not do that. While going back and forth between American Falls and Pocatello, looking for work, Kass again called on appellant about September 25, 1928; talked with appellant, who told him work would be ready in about a month or two, and asked what Kass was getting for his trucks, and said that $2.50 an hour was fair enough; said two trucks would not be enough, and he ought to get six more, either hire or buy more. Later on, about 6 o'clock on the same day, appellant asked Kass if he had any money yet, to which he replied, " 'Yes, I got a little money, but I can't meet my obligations on my trucks, on account those payments come due each month, $180 a payment.' He says he has got another proposition for me." Then invited Kass to dinner with him, and in the presence of Mrs. Stevens asked him if he would not rather have two thousand dollars than one; that someone was after appellant, whom he owed a hundred dollars, and if Kass would give appellant another $100, the latter would pay his creditor and Kass would get $2,000 instead of $1,000 the first of the year. They then went to appellant's office, and he wrote out the other check for $100, which was signed by Kass and afterwards cashed by appellant.

On this date, appellant also said he had a million dollars in Liberty bonds and had a nice home in New York. This

statement was made when they were alone, Mrs. Stevens not being present; said he would probably come down on Sunday and take Kass and show him the mine, and pointed out its alleged location on an automobile map; that he would employ Kass with both his trucks; that he would see he got on the job with Henry Ford as quick as the work was ready, about November 15, 1928. Kass does not remember the date, but testifies appellant told him he would pay him going wages if the mine was not ready to work on November 15th. Kass then went to work, and did not see either appellant or his wife until January 2, 1929, when he saw Stevens at the Bannock County jail. Kass testified:

"I shook hands with him. I asked him what he was doing in here. Well, he didn't know what to say. I says, 'That is a pretty nice place for you,' so I asked him, 'Do you remember what you promised me?' Well, he says, he could remember some of it, but not all of it, so I told him. I told him, 'You promised me a job with both of my trucks and advised me not to sell them.' I says, 'I am in a bad fix now.' I says, 'I ain't got no money to meet my obligations; I ain't got no job.' And I says, 'You told me you had a million dollars in Liberty Bonds,' and he told me he was going to open up an office in Idaho Falls, and nothing come true. 'Well,' he says, 'I lied to you.' He said, 'I told you a lie.' He said, 'I didn't have no million dollars in bonds,' and he said, 'I didn't have no money hardly at all.' . . . . He told me not to put any complaints in against him. . . . . He said he would give me two thousand dollars, but he didn't have the money, but he says he would straighten everything up as quick as he comes out of jail."

On January 8, 1929, Kass received the following letter (State's Exhibit "F"), inclosed in an envelope postmarked at Pocatello, January 7, 1929:

"Dec 7 1929

"Dear Friend, Mr. Kass,

"I am writing you to let you know that I want to retorn to you the Two Hundred you loand me, for I believe in

right and want to do Right as a Christen should do. It is Human to err and Devine to forgive.

"Kindley come and see me as soon as posiable.

"With best wishes,

"Your Friend,
"A. B. MEYER,
"County Jail."

Kass went to see appellant the next day and was offered his money back; said he could not give Kass $2,000, he did not have it, but he would give Kass $220. Mrs. Stevens indorsed a check for that amount, and appellant handed it to Kass.

Kass testified that he believed the representations made by appellant; believed that he was working for Henry Ford; believed his promise to give him a job and pay him $2,000, and parted with his $200 for that reason; that he went to appellant for advice because he was out of work and in debt, had advertised the trucks for sale, and none wanted to buy them.

The State introduced the "reading," consisting of six typewritten pages, and mailed to Kass under date of September 14th; a carefully and vaguely worded document in which the writer pretends to read the future for his client, but couched in general terms. John Milnickel, 74, a prospector who was not finding any prospects, was also sent a reading in the identical language. Kass needed work to pay his debts; Milnickel needed to find a paying prospect; the clairvoyant consulted the same spirits; saw the same relatives, having the same names; saw the same dangers confronting each client; and suggests the same consolation in each case. Both readings are in evidence.

The first check for $100 was paid through a Pocatello bank; the second check was taken to the newspaper publisher at American Falls, who went to the bank there and cashed it, returning the entire amount to appellant except the charge for a week's publication of his advertisement. Both checks were honored by the drawee bank and charged to the account of Karl Kass.

Appellant also called in his wife when interviewed by Milnickel, shortly prior to the Kass interview, in which he asked her where he (appellant) was a year ago, and she answered, "In Detroit, Michigan," working for Henry Ford, who gave him $50,000. Appellant also said to Milnickel that he (appellant) had put Henry Ford where he is now. The State proved by common repute that Henry Ford was not working any mine in the vicinity of Carey, Idaho, or building any road to that point from any mine, or that any ore was being hauled therefrom in trucks, at the time the representations were made or at all. The manager of the Ford Motor Company, having charge of the Ford interests for all the territory in which the pretended mine was located, testified that no such man as A. B. Meyer or Sam Stevens was in the employ of the Ford interests at the time of the representations. Two deputy sheriffs and the justice of the peace before whom appellant was arraigned testified to statements made by the latter to the effect that he was a changed man; that he was going to pay back the money he had received from different ones, and was going straight from then on, and asked for their assistance. He further stated to the justice, "If you knew what I have suffered from my wrongdoing, or from the consequences of my wrongdoing, you would help me." In this conversation, appellant was informed as to the evidence against him as charged in two other complaints, and the misrepresentations claimed by Kass.

There are many acts and statements of appellant appearing in the record that have not been recited because cumulative in their nature.

It is contended that the evidence is insufficient to sustain the verdict in that the representations made were not of an existing fact or past event; that any representations made were predicated upon promises to be fulfilled in the future, and that the prosecuting witness parted with his money upon appellant's promise to perform certain acts in the future. There is sufficient competent evidence that Kass parted with his money believing that appellant was a man of

wealth, in the employ of Henry Ford, and was in position to fulfil his promise of employment and repayment of the loans from Kass, and also that Henry Ford was engaged in mining near Carey, was there constructing roads and installing machinery. All of these representations (being shown to be false) relate to past or existing facts, and come within the rule announced in *State v. Whitney, supra.*

Appellant assigns as error the admission of State's Exhibit ''C,'' a letter from appellant to Kass, advising the latter not to sell his trucks and assuring him that everything would come out all right. The letter, considered in the light of the relationship between the parties and that Kass had gone to appellant for consultation in his capacity as fortune-teller or clairvoyant, was a circumstance in the train of events growing out of that relationship. In cases of this class, the circumstances connected with the transaction, as well as the entire conduct of the defendant, including his declarations to third persons, are proper matters for consideration by the jury. They may be looked to to furnish the necessary corroborative evidence required by C. S., sec. 8956. (See *People v. Wymer,* 53 Cal. App. 204, 199 Pac. 815.)

The same conclusions apply to the admission of State's Exhibits ''I,'' ''J,'' and ''K,'' being the newspaper advertisement which was the means of bringing the parties together, and two ''readings,'' one mailed to Kass and the other to Milnickel, which are identical in language. Nor was it error to admit the testimony of Kass as to a conversation had with appellant, occurring after the false pretenses were made, regarding appellant's staying at the home of a woman at Idaho Falls overnight, when his satchel containing papers was stolen, etc.

The admission of the testimony of the witness Outzs, a mining prospector, who testified as to his knowledge of mining activities in the vicinity of Carey, Idaho, is assigned as error. This evidence went to the falsity of the material misrepresentations of fact, and was admissible for that reason. It was not necessary that this proof should be

direct. If the evidence tended to show the falsity of the misrepresentations, it was sufficient. The next assignment relates to the refusal to strike the testimony of the witness E. H. Huish, who, it appears, had charge of all the records pertaining to Ford employees in the section of the country where the alleged Ford mine near Carey, Idaho, was located. His testimony that there was no record of any employment of A. B. Meyer, and that neither A. B. Meyer nor Sam Stevens was in the employ of the Ford Motor Company at the time mentioned in the alleged representations, was relevant, and, when coupled with the admissions of the defendant, was sufficient to establish the falsity of the representations as to such employment. Counsel argues that there was no identification of any "Henry Ford." It is made to abundantly appear from the record that appellant represented that he was working for *the* Henry Ford of Detroit, Michigan.

Much is said in appellant's brief as to the admission in evidence of certain conversations had with appellant by certain witnesses, among others officers of the law, after his arrest. It is contended that the *corpus delicti* had not been established, and therefore the conversations could not be received. This is on the theory that Kass' testimony of the material false representations was not sufficiently corroborated to satisfy the requirements of C. S., sec. 8956.

Speaking of the necessity of proof of the falsity of the pretenses made, it is said:

"It is not necessary that the proof should be direct; it is sufficient if the evidence establish such facts as tend legitimately to show its falsity; and since accused is usually in a position to know the truth or falsity of the representation, slight evidence of its falsity is sufficient for a conviction, in the absence of countervailing evidence of its truth." (25 C. J., p. 652, sec. 89.)

Generally, statements made by one accused of crime after his arrest, if voluntarily made, and which reasonably tend to prove his guilt, are admissible against him. (*State v. Adams,* 10 Ida. 591, 79 Pac. 398; *State v. Ellington,* 4 Ida.

529, 43 Pac. 60; *State v. Wilson*, 41 Ida. 616 (629), 243 Pac. 359; *State v. Garney*, 45 Ida. 768 (773), 265 Pac. 668.) We are of the opinion that Kass' statements as to the misrepresentations were otherwise sufficiently corroborated to satisfy the requirements of C. S., sec. 8956, and therefore admissible.

The witness Matthews, a deputy sheriff, testified that he went to Oregon December 20, 1928, to bring back appellant. Over objection, he testified that appellant had resisted extradition, and to certain conversations had with appellant as to his financial worth, etc. On motion, the court struck all of his testimony except the conversations. On the whole record, we do not consider that the appellant was prejudiced by the matter admitted and later stricken. The conversations with appellant were admissible, and constitute the damaging portion of this witness' testimony.

The last nine assignments of error relate to the failure to give instructions asked for by appellant. The court refused to give a peremptory instruction to acquit the defendant. If the evidence is insufficient, the court may advise the jury to acquit (C. S., sec. 8963), but this advice is not binding on the jury, who must be so instructed. (*State v. Peck*, 14 Ida. 712 (719), 95 Pac. 515; *State v. Downing*, 23 Ida. 540, 130 Pac. 461; *State v. Wright*, 12 Ida. 212 (218), 85 Pac. 493.) The evidence was sufficient to go to the jury, and it was not error to refuse to advise the jury to acquit. The refusal to give such an instruction is not reversible error, nor is it reviewable in this court. (*State v. Sullivan*, 34 Ida. 68 (79), 199 Pac. 647, 17 A. L. R. 902; *State v. Shelton*, 46 Ida. 423 (429), 267 Pac. 950; *State v. Smith*, 46 Ida. 8 (14), 265 Pac. 666; *State v. Mason*, 41 Ida. 506 (511), 239 Pac. 733; *State v. Brassfield*, 40 Ida. 203 (212), 232 Pac. 1; *State v. Foell*, 37 Ida. 722 (725), 217 Pac. 608; *State v. Suennen*, 36 Ida. 219 (220), 209 Pac. 1072; *State v. Chacon*, 36 Ida. 148 (156), 209 Pac. 889.)

Appellant argued that the State had selected the wrong county in which to prosecute appellant. The evidence shows that the conversations were had by Kass with appellant in Bannock county, where the checks were deliv-

ered. The money was actually paid over on the checks in Power county. The crime originated in Bannock county, and was completed in Power county. The venue was therefore in either Bannock or Power counties. (C. S., sec. 8688; *State v. Sheehan,* 33 Ida. 553, 196 Pac. 532.)

While we do not consider that appellant has properly raised the question here, the contention that the proof shows a variance from the allegations of the information, is not tenable. The information alleges payment of $200 by Kass to appellant. The proof shows the delivery of two checks for that amount, which were afterwards cashed by appellant. There is no merit in the contention that the money obtained did not belong to Kass.

"Where one is informed against for the crime of obtaining money by false pretenses, proof that the defendant obtained money through the medium of a check drawn upon a bank, is sufficient to sustain the allegation charging the crime." (*State v. Sheehan, supra.*)

Appellant complains of the failure to give his proposed instruction No. 6 as to the presumption of innocence. We conclude that instruction No. 4, as given by the court, fully covers the subject, and it was not error to refuse to give appellant's proposed instruction.

As to appellant's proposed instruction No. 7, failure to give which is assigned as error, a careful reading of the record shows that this instruction was given *verbatim* by the court in instruction No. 6. Proposed instruction No. 9 likewise was given word for word, except the last sentence thereof, reading, "Unless you so find, you must acquit the defendants." The law was rightly stated in the instruction as given, and the quoted matter properly excluded. Instruction No. 7, as given by the court, contained all of proposed instruction No. 11, but in addition told the jury that where an information stated several false pretenses relating to a present or past fact, a conviction might be had on proof of only one of such pretenses, provided it was material in inducing the witness to part with his money. The instruction, as given, properly stated the law. (25 C. J., p. 640, sec.

75; 12 Cal. Jur., p. 469, sec. 19; *People v. Harrington,* 92 Cal. App. 245, 267 Pac. 942; *People v. Walker,* 76 Cal. App. 192, 244 Pac. 94.)

Finally, error is assigned because of the court's failure to give appellant's proposed instruction No. 12, to the effect that if the facts are as consistent with innocence as with the guilt of defendants, the jury should acquit. Such an instruction would be proper in cases where the evidence is wholly circumstantial, but where, as here, the evidence is direct and corroborated, it is not error to refuse to give it. (16 C. J., p. 1011, sec. 2436; Branson's Instructions to Juries, 2d ed., p. 100, sec. 58; *State v. Peters,* 43 Ida. 564, 253 Pac. 842; *Casper v. State,* 100 Neb. 367, 160 N. W. 92.)

Judgment affirmed.

Budge, C. J., and Givens, T. Bailey Lee and Wm. E. Lee, JJ., concur.

Petition for rehearing denied.