253 P.2d 203

**STATE v. OWEN et al.**

No. 7853.

Supreme Court of Idaho.

Jan. 27, 1953.

David Doane and Robert H. Copple, Boise, for Owen.

Vernon K. Smith, Boise, for Hastings.

Robert E. Smylie, Atty. Gen., and John R. Smead, Asst. Atty. Gen., Merlin S. Young, Pros. Atty., and Blaine F. Evans, Asst. Pros. Atty., Boise, for respondent.

TAYLOR, Justice.

On September 7, 1951, the defendants (appellants) William Lawrence Owen, 40, and Kenneth Raymond Hastings, 29, each armed with a gun, and with the avowed intent to commit robbery, entered the Holly··

wood Grocery, located at the corner of Resseguie and 8th Streets, in Boise, Ada County, Idaho. The grocery store was owned and operated by the deceased Bert McCurry and his wife. Upon entering, Hastings went down one aisle to a small card table, where Mrs. McCurry was preparing the bank deposit, and asked her for cigarettes. When she went behind the counter he followed around to the other side of the counter and there held her at gun point. Owen had proceeded directly to the rear of the store where Mr. McCurry had just emerged from the locker room behind a meat counter. Owen exhibited his gun and informed him that it was a stick-up. Mr. McCurry seized a meat cleaver from the meat block and started around the counter to where Owen stood. Owen said he fired a shot over McCurry's head to scare him, but Mr. McCurry continued to advance and he (Owen) started to back up the aisle toward the door; that Mr. McCurry continued to follow him, with the meat cleaver raised; at a point about half way down the length of the store, he fired another shot past Mr. McCurry and yelled to his companion, "Let's get out of here," and to Mr. McCurry to stop and "let me get out of here;" that Mr. McCurry continued to pursue him; that when he reached the door, which was standing open except for a screen, he bumped into the side of the door with his left shoulder; that Mr. McCurry still advancing was then about seven feet from him; that he then fired a third shot at the arm holding the cleaver aloft; that Mr. McCurry then started to fall and he ran out.

There is a conflict in the evidence as to whether Hastings left the store first or whether the two defendants emerged at approximately the same time. They ran to a car waiting at the curb to the north of the store and were driven away by a woman companion whom they had left at the wheel. A short time later they were arrested in Nampa by Nampa police acting upon radio messages transmitted by the Boise police.

The third shot fired by Owen entered the body of the deceased near the center line of the upper chest cavity, rupturing an artery, went through the fifth dorsal vertebra and shattered the spinal cord. Mr. McCurry died as a result of the wound on September 9th.

The defendants were charged with the crime of murder in the first degree, tried by jury, found guilty, and the jury in its verdict decided that the punishment should be death.

The first six assignments question the court's ruling in allowing the state's challenges to six veniremen on the ground of implied bias, specifically, that they entertained conscientious opinions or scruples against the imposition of capital punishment. In substance these veniremen answered on voir dire that while they could and would determine the question of guilt or innocence, without bias, they could not vote for the death penalty.

"Every person guilty of murder in the first degree shall suffer death or be punished by imprisonment in the state prison for life, and the jury may decide which punishment shall be inflicted. . * * *" § 18-4004, I.C.

Among the grounds of challenge for implied bias provided by § 19-2020 I.C. is the following:

"If the offense charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; in which case he must neither be permitted nor compelled to serve as a juror." § 19-2020, paragraph 9, I.C.

Appellants urge that since § 18-4004 is not mandatory, it providing only that the jury *may* decide the punishment, and that under § 19-2020 the ground of challenge is the "entertaining of such conscientious opinions as would preclude his finding the defendant *guilty*" (emphasis supplied), and these veniremen having answered that they could freely pass upon guilt or innocence, they were not disqualified.

This same construction of these sections was urged in State v. Wilson, 41 Idaho 616, 243 P. 359. The court there called attention to the fact that at the time § 19-2020, I.C. was enacted (1864) the sole penalty provided for murder in the first degree was death. (Cr.Pun.1864). It was plain that a venireman who could not vote for the death penalty could not find the defendant guilty, and therefore "must neither be permitted nor compelled to serve". Although the section setting forth the grounds of challenge was not amended in 1911 when the punishment for first degree murder was modified by adding the alternative of life imprisonment, since the jury was specifically authorized to decide which punishment should be inflicted, the intent of the law remained the same: That is, a prospective juror entertaining such scruples and who under the amended statute *may* be required to vote upon the death penalty "must neither · be permitted nor compelled to serve as a juror." As stated in State v. Wilson, supra [41 Idaho 616, 243 P. 361], "the conclusion is inevitable that a prospective juror who has conscientious scruples against the death penalty is not qualified to sit as a juror where the charge is murder in the first degree." No error was committed in allowing the challenges. State v. Hoagland, 39 Idaho 405, 228 P. 314; Corens v. State, 185 Md. 561, 45 A.2d 340; 31 Am.Jur., Jury, § 159; 50 C.J.S., Juries, § 245(b).

By assignments 7 and 8, appellants present the ruling of the trial court in sustaining the state's objection to their respective offers of proof "to show facts and circumstances of defendants' age, upbringing and environment for the purpose of mitigating punishment."

Assignment No. 9 presents the refusal of the court to give appellant Hastings' requested instruction No. 17a. This re-

402

quest would advise the jury, in determining the penalty, to consider all facts in aggravation and also facts in mitigation, and that the jury is at liberty to consider the age, early environment and background of the accused.

■ Assignment No. 10 complains of the court's instruction No. 31 and particularly that part thereof reading as follows:

"In determining what punishment should be inflicted you should consider and arrive at such decision from a consideration of all the evidence in this case and uninfluenced by any bias, prejudice, or purpose other than to effect substantial justice."

It is contended that this instruction should have been more specific and should have included, in reference to all the evidence, "both with respect to matters of aggravation and matters of mitigation," and that the court erred in not defining "substantial justice." "Substantial justice" is here used in its popularly áccepted sense. No technical definition is required. We see no merit in this assignment.

■ As to the assignments involving the right of the accused to produce evidence of their age, upbringing and environment, we first observe that this does not necessarily involve the right of an accused to produce evidence of his good character. Evidence of good or bad character is admitted for whatever weight it may have on the likelihood or unlikelihood of the defendant having committed the crime charged. It goes to the question of guilt or innocence and is especially appropriate and applicable in a case where the commission of the offense must be determined on the basis of circumstantial evidence.

■ However, the law does recognize that previous good or bad conduct should be considered in fixing the punishment for crime. Such is the underlying principle of the persistent violator statute. § 19-2514, I.C. The courts have long recognized that the first offender should be accorded more lenient treatment than the habitual criminal. In addition to considerations of humanity, justice and mercy, the object is to encourage and foster the rehabilitation of one who has for the first time fallen into error, and whose character for crime has not become fixed. State v. O'Dell, 71 Idaho 64, 225 P.2d 1020.

■ Our statute also provides the court with discretionary power to consider circumstances in aggravation or mitigation of punishment, as follows:

"After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same sum-

marily, at a specified time, and upon such notice to the adverse party as it may direct." § 19–2515, I.C.

And § 19–2516, I.C., requires that the hearing be had in open court. It may be open to debate as to whether the "circumstances" mentioned in § 19–2515, I.C., refer particularly to circumstances surrounding the commission of the crime and tending to aggravate or mitigate the character of the conduct involved, or whether such circumstances include also the convict, himself, as an individual, which would include his background, his age, upbringing and environment or any other matter appropriate to a determination of the degree of culpability. We think that the statute should be given the broader interpretation, particularly in a capital case. James v. State, 53 Ariz. 42, 84 P.2d 1081.

 It, therefore, appears that the law contemplates that in fixing the penalty, the court, when requested by either party, may and should hear and consider circumstances in aggravation or mitigation of the punishment. It logically follows that if it is proper for the court to hear and consider such evidence, the jury where it is called upon to fix the punishment, should have the opportunity to consider such proof, subject, of course, to a proper instruction limiting the jury's consideration of such evidence to the determination of punishment, and cautioning that it is not to be considered in determining guilt or innocence, or be allowed to influence the determination of that question. The offer of proof in behalf of the defendant Owen is as follows:

"Mr. Doane: Comes now the defendant William Lawrence Owen and offers to prove by the present witness that the defendant William Lawrence Owen was born in Tannover, California, on October 2, 1911, in a family consisting of his mother and father, one sister and one twin brother; that his father's occupation was that of a railroad foreman; that his nationality was Welsh and half-breed American Indian; that his mother was a full-blooded American Indian of the Wylacki tribe in northern California; that in the year 1917 when the defendant was of the age of six years his mother died; that the defendant had no real home life in the ordinary meaning of the term, and lived from time to time with his sister and other relatives; that he completed his formal schooling at the age of fourteen and thereupon proceeded to provide for himself, and his first major occupation was that of deck boy on a sailing vessel, upon which vessel he served for two and a half to three years; that since that experience at sea the defendant learned foundary moulding as his trade and has followed that trade ever since that time, and just prior to his coming to the State of Idaho, approximately two weeks before the date of September

.7, 1951, was so engaged in his occupation."

The offer made by defendant Hastings consists of a lengthy recital of his military service in the United States Army commencing with his voluntary enlistment on July 9, 1940, and ending with his discharge in July, 1945. It contains a detailed statement of the different periods and places of service, engagements in which he or his unit participated, time, place and manner of wounds suffered and of decorations conferred, and also as to decorations and citations conferred upon the regiment, battalion and division in which he served. Except for this military record, he offered no evidence as to age, upbringing, and environment, which was not admitted. Such a detailed statement of military exploits, engagements, wounds and medals, would have a natural tendency to prejudice the jury in the defendant's favor, and the nature of the offer here would suggest that that was perhaps its purpose. However, we think a briefer statement of military service would be a proper part of a background sketch.

It is the general practice, at least in important criminal trials, to permit any witness to testify briefly and generally as to his background, giving such facts as date and place of birth, family relationship and occupation, to better enable the jury to appraise the general character of the witness. Each of the defendants was a witness in his own behalf and should have been permitted to testify to such general biographical facts in his capacity as a witness, if for no other purpose. Owen was permitted to testify only to the date and place of his birth. Hastings was permitted to testify to the date of his birth, that in 1932 when he was ten years of age his father died, and that his mother had remarried. The court should have admitted the evidence offered by Owen and anything of a like character which Hastings may have desired to introduce. 70 C.J., Witnesses, § 919.

However, since the offers were expressly limited to mitigation of punishment, and since the question of guilt is free from doubt, and since the error can be expunged by a commutation of the sentence, we hold that it does not require reversal of the judgment.

 Assignments 11 and 12 assert error in the overruling of objections by the defendants to questions asked by the state on cross-examination with respect to previous felonies. Defendant Owen had testified under direct examination in response to a question by his own counsel that he had been previously convicted of a felony. On cross-examination the prosecuting attorney brought out that he had been convicted of three felonies, and, over his objections he was required to answer the question, "What were those felonies?", to which he answered, "Grand theft and forgery and robbery." As to the defendant Hastings, after he had testified on

cross-examination that he had been previously convicted of a felony, his testimony was as follows:

"Q. Will you state what that felony was?

"Mr. Smith: Just a minute. Object to the question as being improper. This wasn't gone into on direct examination.

"The Court: Objection overruled.

"A. National Firearms Act [48 Stat. 1236]; I believe it was '36.

"Q. Have you been convicted of any other felonies? A. Yes, one other.

"Q. Will you state what that was?

A. Strong-arm robbery, last year."
Appellants urge that having admitted the fact of previous felony convictions, they should not have been required to go further and reveal the nature of the crimes for which the convictions were suffered. The controlling statute is as follows:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony." § 9–1209, I.C.

Cf. § 9–1302, I.C. This section is a part of Title 9, dealing with evidence generally, and is applicable alike in civil and criminal actions. § 19–2110, I.C.; State v. Kleier, 69 Idaho 491, 210 P.2d 388.

It is quite universally held that a witness may be impeached under this or similar statutory authority. The application of such a provision to the accused when he becomes a witness, however, has been the subject of considerable discussion by the courts. However, it is now generally held that such a provision is applicable to the defendant, and that when he voluntarily takes the witness stand he subjects himself to cross-examination and impeachment under the same rules and conditions as any other witness. Wigmore on Evidence, 3rd Ed., § 890; 58 Am.Jur., Witnesses, §§ 685–6–7–8–9; 70 C.J., Witnesses, § 990; State v. Odell, 38 Wash.2d 4, 227 P.2d 710; State v. Velsir, 61 Wyo. 476, 159 P.2d 371, 161 A.L.R. 220; Stanley v. State, 171 Ark. 536, 285 S.W. 17; People v. Sorge, 1950, 301 N.Y. 198, 93 N.E.2d 637; Fritch v. State, 199 Ind. 89, 155 N.E. 257; Tosser v. State, 200 Ind. 156, 162 N.E. 49; Annotation 90 A.L.R. 870.

This rule has been recognized in Idaho. State v. Larkins, 5 Idaho 200, 47 P. 945; State v. Webb, 6 Idaho 428, 55 P. 892; State v. Silva, 21 Idaho 247, 120 P. 835; State v. Wilson, 41 Idaho 616, 243 P. 359; State v. Martinez, 43 Idaho 180, 250 P. 239; State v. Alvord, 46 Idaho 765, 271 P. 322; State v. Smailes, 51 Idaho 321, 5 P.2d 540; State v. Hargraves, 62 Idaho 8, 107 P.2d 854; State v. Mundell, 66 Idaho 297, 158

P.2d 818. The annotations in 6 A.L.R. 1608, 25 A.L.R. 338, 103 A.L.R. 350, and 161 A.L.R. 233, reveal the almost universal acceptance of the proposition. The rule applicable is thus stated by the annotator:

"It is generally provided by statute that a previous conviction of crime may be shown on the cross-examination of a witness for the purpose of testing his credibility, and statutes of this kind, even when not specifically made applicable to the accused in a criminal case, are held to be so applicable." 6 A.L.R. Annotation 1608, at 1626.

At page 1638 of 6 A.L.R., the compiler has listed decisions purporting to support a minority view. As to these, in a subsequent annotation, attention is directed to the fact that Arizona has since taken the majority view. West v. State, 24 Ariz. 237, 208 P. 412; Hadley v. State, 25 Ariz. 23, 212 P. 458; Cochrane v. State, 48 Ariz. 124, 59 P. 2d 658. In the Hadley case the Arizona court said:

"The general rule, in the absence of a statute regulating the matter, when a *defendant* offers himself as a witness, is that it may be shown, either by the record or on cross-examination, that he has suffered previous conviction of a felony or felonies. Either method is permissible. * * *

"The record, which is the best evidence of a previous conviction, may always be introduced. It, of course, would show the nature of the crime. The defendant cannot, in anticipation of the exposition of his past in that particular, by testifying to it on his direct examination, prevent the prosecution from showing the nature of the crime of which he was previously convicted. Indeed, the weight of the evidence as a factor of impeachment depends upon the character of the crime involved in the previous conviction—as, whether it involved moral turpitude or was merely malum prohibitum." Hadley v. State, 25 Ariz. 23, 212 P. 458, at page 462.

The Delaware case cited as supporting the minority rule, State v. Burton, 2 Marv., Del., 446, 43 A. 254, holds that a prior conviction of an offense, which would not affect the credibility of the accused as a witness, may not be shown. In the decisions from Illinois, Massachusetts, and Pennsylvania (appearing in the annotation in 103 A.L.R. 363, as supporting the minority view) the rule is that the accused may be impeached by proof of a prior conviction, but, since the record of the judgment is the best evidence, the impeachment must be accomplished by the production of the record, not by cross-examination.

The remaining state, West Virginia, listed as adhering to the minority rule, has since changed its position by reason of a change in its controlling statute, and now holds that the accused may be required to answer as to previous convictions of felonies

or misdemeanors. State v. Friedman, 124 W.Va. 4, 18 S.E.2d 653.

The result is, we find no jurisdiction which does not permit the impeachment of the accused when he becomes a witness, by proof of prior crimes, either by the record, cross-examination, or by testimony of other witnesses. However, it is equally well settled that such evidence is admitted solely for the purpose of affecting the credibility of the defendant as a witness, and the courts in certain jurisdictions have circumscribed its admission by various requirements intended to safeguard the accused against undue prejudice to his defense. In California, where the statute is the same as ours, the prosecution is allowed to establish prior convictions and the nature of the offenses involved, but not the details or circumstances thereof. People v. Romer, 218 Cal. 449, 23 P.2d 749; People v. David, 12 Cal.2d 639, 86 P.2d 811; People v. Williams, 27 Cal.2d 220, 163 P.2d 692; People v. Youders, 96 Cal.App.2d 562, 215 P.2d 743; People y. Newman, 102 Cal.App.2d 302, 227 P.2d 470.

In People v. David, the Supreme Court of that state set the rule out as follows:

"In this state the testimony of a witness may be impeached by proof that he has suffered the prior conviction of a felony. Code Civ.Proc., § 2051. This rule applies to a defendant who testifies in his own behalf in a criminal trial notwithstanding the fact that such evidence tends to prejudice him in the eyes of the jury. * * * The nature of the crime or crimes of which he was convicted is a proper subject of inquiry in establishing the fact of his conviction. * * * But details and circumstances comprising the prior offenses are not admissible. * * *" People v. David, 12 Cal.2d 639, 86 P.2d 811, at page 814.

State v. Hacker, Mo.Sup., 214 S.W.2d 413.

In our search of the authorities, Montana is the only jurisdiction in which we find direct support for appellants' position on the specific point here involved. The Montana statute is essentially the same as our own. It is there held that if the defendant on cross-examination affirms the fact of a former conviction of felony, that is as far as the examination may go. But, if he denies such previous conviction it may then be shown by the record. State v. Coloff, Mont., 231 P.2d 343; State v. Quinlan, Mont., 244 P.2d 1058. These are three to two decisions. The weight of authority and better reasoning appears to be with the minority view as expressed by Justice Angstman in the Coloff case. The alternative of establishing the conviction by the record of the judgment would, of course, reveal the nature of the crime. Thus giving the information to the jury by this method is sanctioned by the statute and is not regarded as prejudicial. How, then, does it become taboo and prejudicial when produced by cross-examination?

In State **v.** Crawford, 60 Utah 6, 206 P. 717, the same contention was urged as is urged here, and the Utah Court well said:

> "The weight of authority, and, we think, the better reasoning, is that the jurors are entitled to know of what particular felony a witness has been convicted. The evidence of conviction is admissible for the purpose of affecting the credibility of the witness. Some crimes involve a greater degree of moral turpitude than others. Some felonies are more heinous than others. Some convictions on felony charges affect the credibility of witnesses much more than others. 40 Cyc. 2610(b) with cases cited; McDaniel v. State, 8 Okl.Cr. 209, 127 P. 358." State v. Crawford, 60 Utah 6, 206 P. 717 at page 719.

We conclude that no error was committed by requiring the appellants to state the nature of the felonies for which previous convictions had been admitted. We are not unmindful of the opinion of this court in the case of State v. Branch, 66 Idaho 528, 164 P.2d 182. That decision, insofar as it is in conflict herewith, and insofar as it restricts the application of § 9-1209, I.C., (where the accused is a witness) to cases in which he has put his general reputation in issue, is hereby overruled.

▇▇▇ By assignment No. 13 the appellants complain of the closing argument of the prosecuting attorney in which he said:

"Both of these defendants are leeches off society, as it were, by perpetrating robbery. Does society have any duty to these men? They have leeched off of society in the past. Should these men continue to do that? Should they be supported by the State of Idaho?"

This was improper argument. It is subject to the inference that the prosecutor was urging the death penalty to avoid the burden to the state of supporting the defendants in the penitentiary. As was said in State v. Givens, 28 Idaho 253, at page 268, 152 P. 1054, 1058:

> "It is the duty of the prosecutor to see that a defendant has a fair trial, * * *. The desire for success should never induce him to obtain a verdict by argument based upon anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same."

In Commonwealth v. Clark, 322 Pa. 321, 185 A. 764, cited by appellants, the Supreme Court of Pennsylvania condemns a similar argument by the district attorney. However, there were other errors which contributed to the reversal in that case. In People v. Watson, 216 N.Y. 565, 111 N.E. 243, 244, the court had under consideration improper argument on the part of the district attorney. First, comment on, or inferences drawn from, the failure of the defendant to testify, and second, " 'Now there is no sense in burdening the state with this.

man if he is guilty of murder in the first degree.' " The court said:

"The evidence taken on the trial was sufficient to sustain the verdict of the jury, and it is unnecessary here to repeat the gruesome and unpleasant detail of facts constituting the testimony as it appears in the record. There would be no reason for writing this opinion, and one would not be written, except to avoid an apparent approval of improper statements made by the assistant district attorney (not the one appearing in this court) who tried the case. * * *

"Statements such as those quoted, although improper, can be disregarded by this court when the guilt of the defendant is reasonably certain. The possibility of the defendant's substantial rights having been affected are materially lessened when the trial court expressly directs the jury to disregard such statements. People v. Priori, 164 N.Y. 459, 58 N.E. 668. Counsel for the people in the trial of criminal cases should avoid allowing their zeal to overcome their better judgment and their sense of duty and right. In a case where the guilt of the defendant is doubtful, improper and unjustifiable suggestions, tending to a violation of statutory or other rights of the defendant, would require this court to order a new trial.

"Other alleged errors have been called to our attention by the defendant's counsel, but after a careful study of the record we do not think the defendant's substantial rights have been affected. Code of Criminal Procedure, § 542.

"The judgment of conviction should be affirmed." People v. Watson, 216 N.Y. 565, 111 N.E. 243, at 244 and 245.

As to the remarks concerning the burden to the state of keeping the accused in prison, in that case as in this, it appears no objection was made by the defendant, nor was any instruction to disregard given by the court. And in that case, as in this, the evidence of guilt was conclusive. However, the court should have instructed the jury to disregard the remark and not to allow any consideration of the burden to the state to influence their verdict.

By assignments Nos. 18, 19, 20, 21 and 22 the appellants question the ruling of the court in refusing to give certain instructions requested by them and the giving of certain instructions included in the court's charge. Specifically it is urged that it was error to refuse to charge the jury that involuntary manslaughter, and attempt to commit robbery, were included offenses. The court instructed that the jury might find the defendants or either of them guilty of murder of the first degree, murder of the second degree, voluntary manslaughter, or not guilty. Generally any offense which

is included within the language of the information, or necessarily included in the charge, should be submitted to the jury. However, it does not follow that the failure to submit all the possible included offenses is reversible error.

> "* * * it is not error to refuse to instruct the jury that a defendant may be found guilty of a lesser offense when there is no evidence that would reduce the crime charged to such lesser offense." State v. Elsen, 68 Idaho 50, at page 56, 187 P.2d 976 at page 979.

State v. Thomas, 47 Idaho 760, 278 P. 773; State v. Brooks, 49 Idaho 404, 288 P. 894; State v. Monteith, 53 Idaho 30, 20 P.2d 1023; State v. Scott, 72 Idaho 202, 239 P. 2d 258.

Further, this court has also held that where one or more included offenses of an intermediate grade between the crime of which the defendant is convicted, and the lesser offenses which the court refused to submit to the jury, the refusal is not error because the verdict indicates that the result would not have been different had the omitted request been given. State v. Alvord, 47 Idaho 162, 272 P. 1010.

In this case the killing is admitted and the evidence is conclusive that it occurred while the defendants were either attempting to commit robbery or attempting to escape therefrom. Thus, while it would have been proper to instruct on and submit involuntary manslaughter, it was not error to refuse to do so.

Assignments Nos. 14, 15, 16 and 17 complain of the refusal of the court to instruct the jury that the burden was upon the state to prove, and that the jury must find, as a condition to a verdict of murder in the first degree, that the deceased was killed while the defendants "were still actually engaged" in an attempt to commit robbery. In connection with its application of the statutory definitions of murder of the first degree and murder of the second degree, the court gave the following in instruction No. 13:

> "And I instruct you that if the evidence produced upon the trial convinces you beyond a reasonable doubt that the defendants did kill the said Bert McCurry with malice aforethought or with a deadly weapon, but the evidence fails to show or leaves a reasonable doubt in your minds whether they did so kill him while committing or attempting to commit robbery, and also leaves a reasonable doubt in your minds that such killing was done wilfully and with a deliberate and premeditated intent to kill, then you can find them guilty only of murder of the second degree."

And in connection with its instructions on the law of self-defense, the court gave the following:

> "Instruction No. 19a
>
> "You are therefore instructed that if you are convinced beyond a reason-

able doubt that the defendants in pursuance of an agreement by and between them, entered the decedent's store with intent to rob him, and that they or either of them, for the purpose of carrying out their intent to rob McCurry, put him in fear and intimidated him by pointing a loaded gun at him, at the same time informing him of their intent to rob him, then, under such circumstances, the said McCurry had the lawful right to resist such attempt to rob him, and to protect himself and his property by such means as to a reasonable man situated as McCurry was situated, would seem necessary to effectuate such resistance and protection, even to the extent of killing the would-be robber.

"If, however, you find from the evidence that prior to the shooting of said McCurry by either of the defendants, the defendants had in good faith abandoned their intent to rob McCurry, and had desisted and withdrawn from their attempt to rob, and had, either by word or by act, notified the said McCurry that they had abandoned their intent to rob him—and you further find that thereupon the situation viewed from the standpoint of McCurry was no longer such as would warrant a reasonable man to believe that his person or his property was in danger at the hands of the defendants, or either of them, then the defendants

could resort to the law of self-defense, as such law is given to you in Instruction No. 16 and 18b herein."

The requests were not correct statements of the law applicable to the facts shown by the record, for the reason that a homicide committed by a would-be robber in attempting to effect an escape, and occurring on the premises, or immediately following the attempted robbery, is regarded as having been committed in the course of the robbery or attempt to commit robbery. Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 12 A.L.R.2d 183; 26 Am. Jur., Homicide, § 67. The instructions given adequately cover the requests insofar as they have merit and hence there was no error in the refusal. State v. Stevens, 48 Idaho 335, 282 P. 93; State v. Farnsworth, 51 Idaho 768, 10 P.2d 295; State v. Fox, 52 Idaho 474, 16 P.2d 663; State v. Monteith, 53 Idaho 30, 20 P.2d 1023; State v. Brown, 53 Idaho 576, 26 P.2d 131.

Another question associated with the foregoing is their asserted right of self-defense. By their assignments Nos. 23, 24, 25 and 26, they complain of the refusal of the court to give instructions requested by them on the law of self-defense, and complain of instruction No. 19a, quoted above.

The complaint as to the first paragraph of instruction No. 19a is that it extends to the deceased McCurry the "unqualified right to kill" the would-be robber, thus eliminating the theory of self-defense. The

instruction does not leave the right to kill unqualified. On the contrary, the right of McCurry to resist the robbery and to protect himself and his property, and in so doing to kill, is limited to such means as to a reasonable man, situated as he was, would seem necessary to effectuate such resistance and protection.

In addition to that portion of 19a dealing with self-defense, the court gave in instruction No. 16 the provisions of § 18–4009, I.C., defining justifiable homicide, and also the following:

#### "Instruction No. 18

"From this statute it appears that our laws recognize the right of self-defense. The right to defend oneself against great bodily harm or death at the hands of another is one of the inalienable rights guaranteed to a person under our system of law.

#### "Instruction No. 18a

"But though this right of self-defense is so universally recognized, it is a right which may be resorted to only in proper cases.

"Thus, a person while actually engaged in the perpetration or attempted perpetration of a robbery cannot excuse a subsequent homicide committed in consequence thereof on the ground of self-defense, it being his duty to first withdraw. While he is engaging in the robbery or attempt to rob, regardless of the extremity to which he may be reduced, he cannot be excused for taking the life of the other person to save his own. In such case he brought the necessity upon himself by his own conduct.

#### "Instruction No. 18b

"In connection with the foregoing statement, you are instructed that a bare fear of being killed or of receiving great bodily harm is not sufficient to justify a killing; neither is it necessary that a person be in actual imminent peril of his life or of great bodily harm before he may take the life of his assailant. It is sufficient to so excuse the killing if the circumstances were such as would excite the fear of a reasonable person, similarly situated, viewing the situation and circumstances from the standpoint of the person who did the killing, and that the killing was really and in good faith committed under the fear thus aroused and not from any other motive.

#### "Instruction No. 19

"You are instructed that the defendants in this case contend that though the jury may find from the evidence that they entered into the store of the decedent McCurry in pursuance of an agreement by and between the defendants to therein rob McCurry; and that though the jury may further find that the defendants, in the carrying out of

their intent to rob McCurry, did then and there attempt to intimidate the decedent by pointing a loaded gun at him, and informed him of their intent to rob him—the defendants contend that though the jury find all of the foregoing facts, nevertheless, so the defendants contend, that prior to the shooting of said McCurry they, the defendants, had, in good faith, abandoned their intent to rob McCurry, and had notified him of their abandonment of such intent to rob him, but that in spite of such abandonment by the defendants of their intent to rob McCurry, and of their notice to McCurry of their such abandonment, the said McCurry thereafter assaulted the defendant Owen by threatening to strike him with a deadly weapon, to wit, a meat cleaver, whereupon, the said defendant Owen, believing his life to be in danger, shot the said McCurry in his own self-defense."

Thus the defendants were given the full benefit of the law of self-defense even though from the undisputed facts attested to by themselves it would appear that they were in no position to claim that right. 40 C.J.S., Homicide, § 119b, p. 991; State v. Werner, 144 La. 380, 80 So. 596, 6 A.L.R. 1601; State v. Wilson, 26 Wash.2d 468, 174 P.2d 553.

For the purpose of this discussion and to give the defendants the full benefit of their testimony, it is here noted that in addition to the facts already related from Owen's testimony, he further testified that at the time McCurry picked up the meat cleaver he said to McCurry, "Don't do that!"; and that during the course of his retreat, just before he fired the second shot, and just after he had yelled to Hastings, "Let's get out of here!" he said to McCurry, "Stand still and let me out of here."

In support of their claimed right of self-defense the appellants cite the law applicable to the aggressor in a case of mutual combat, who, having in good faith withdrawn, and by word or act brought home to his antagonist his intention to decline further struggle, is restored to the right of self-defense. Where the homicide results from mutual combat, to establish first degree murder the state must prove premeditation and deliberation. But, where the homicide is committed in the perpetration of, or attempt to perpetrate, robbery, proof of deliberation and premeditation is not essential, but in its stead the state may rely upon proof of the robbery or attempt to rob. § 18–4003, I.C.; People v. Mooney, 2 Idaho 17, 2 P. 876; State v. Gruber, 19 Idaho 692, 115 P. 1; State v. Arnold, 39 Idaho 589, 229 P. 748; State v. Reding, 52 Idaho 260, 13 P.2d 253.

In other words, the statute recognizes the right of the victim (as stated by the court in instruction No. 19a) to resist and to protect himself and his property, and, if necessary to effectuate such resistance, to kill the would-be robber. In such case the robber is not only in the position of an

aggressor who must first withdraw, but he is guilty of perpetrating a crime which the statute defining first degree murder says is so offensive to society that should a death result therefrom, whether intentional, unintentional or accidental, the killing is murder of the first degree. People v. Perry, 14 Cal.2d 387, 94 P.2d 559, 124 A.L.R. 1123; Commonwealth v. Sterling, 314 Pa. 76, 170 A. 258; Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 12 A.L.R.2d 183; 26 Am. Jur., Homicide, § 39. Not only is deliberation and premeditation supplied by the crime, but malice itself is said to be an inherent ingredient of that crime. That is, an attempt to rob is motivated by malice toward the intended victim.

"The reason is that any person committing or attempting to commit, any of these major felonies is *motivated by malice* and when the killing of a human being directly results, even though *not intended,* from his malicious act, it is murder because *malice,* the essential element of murder, *is present.* The felon's malicious act in perpetrating or attempting to perpetrate, his planned major crime is justly regarded by the law as the causative antecedent of the homicide. In cases of this kind society puts its punitive hand on the person responsible for the legally blamable cause. This doctrine is authoritatively recognized in the law." Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 610, 12 A.L.R.2d 183, at page 200.

We do not say that, under no circumstances, can one attempting to commit a robbery change his mind, abandon the attempt and thereafter be restored to the right of self-defense. What we do say, is, that where one enters upon the premises of another intent upon committing robbery, and displaying a deadly weapon, is met by resistance on the part of his intended victim, and such resistance or counterattack is pressed with such vigor that the would-be robber has no opportunity to abandon his plan or withdraw from the resulting conflict, and kills the intended victim in attempting to escape or to save himself from death or bodily harm, he is guilty of murder of the first degree. That is the state of facts which appears from the record in this case. The deceased was not required to accept Owen's command to "stand still and let me out of here," as conclusive of his intention to abandon the hold-up. He was still being menaced by the flaming gun in Owen's hand, and his wife faced a similar peril in the hand of Hastings.

"As long as a person keeps his gun in his hand prepared to shoot, the person opposing him is not expected or required to accept any act or statement as indicative of an intent to discontinue the assault." 40 C.J.S., Homicide, § 121, p. 996.

Having deliberately planned to rob the deceased at gun point, appellants had no right to anticipate that he would cower before them and meekly surrender his money.

On the contrary, the law affirms the right and duty of a citizen to resist such felons. § 19–604, I.C. The fact that he asserts that right and attempts to perform that duty, is under no circumstances to be held culpable on his part, or to redound to the benefit of his assailant, and thus afford the assailant an excuse to kill him on a claim of self-defense. Appellant Hastings testified that he "bargained for robbery, but no violence." On the contrary, when these men entered the store, both armed with loaded guns, for the avowed purpose of robbery, they bargained for violence. 26 Am.Jur., Homicide, § 66. A rule such as is contended for by appellants, under the facts of this case would make it comparatively simple for a criminal to plan a robbery intending to rest the consequences, as far as homicide is concerned, entirely upon the reaction of the one to be robbed. If he cravenly submits, the robbery is accomplished and escape effected with a minimum of risk. If he resists and backs up that resistance with a show of force, then he may be safely shot down on a plea of self-defense. Such a rule would make our state a robbers' paradise.

In the case of State v. Shockley, 29 Utah 25, 80 P. 865, the defendant, armed with a gun, entered a streetcar for the purpose of robbing the motorman and conductor, who had just completed their day's run. As he approached down the aisle he told them to hold up their hands. One did so and the other responded, "You had better hold up your hands." At this show of resistance the defendant said he started backing out, lowered his gun to his side to indicate his intention to abandon the robbery, and near the door slipped and fell. The two men then started for him, one of them producing a gun. In the struggle which ensued, during which he said he told them he would surrender, both the conductor and motorman were killed by the defendant. Shockley pleaded self-defense. In a well reasoned opinion the court said:

"When the defendant covered Gleason and Brighton with his revolver and ordered them to put up their hands, they had a right to presume, and to act upon such presumption, that in case either of them failed to comply with his demand he would do precisely what he did do, viz., shoot them down. And, so long as he kept his gun in his hand prepared to shoot, they were neither expected nor required to construe and accept any act or statement of his as an intent on his part to discontinue the assault and surrender himself as a prisoner. * * *

"In 25 Am. & Eng. Encyc. L. 270, the rule is stated as follows: 'While he remains in the conflict, to whatever extremity he may be reduced, he cannot be excused for taking the life of his antagonist to save his own. In such a case it may be rightfully and truthfully said that he brought the necessity upon himself by his own criminal conduct.' * * * 'If the circumstanc-

es are such, arising either from the condition of his adversary, caused by the aggressor's acts during the affray, or from the suddenness of the counter attack, that the original assailant cannot so notify his adversary, it is such assailant's fault, and he must take the consequences.' * * *

"The same rule does not govern in this case that applies to parties engaged in a mutual combat, or one that arises from a sudden quarrel or heat of passion, wherein both parties may be at fault. In such a case the aggressor, if he can do so, may in good faith withdraw from the combat and place of encounter, and, if he does, the party assailed is not justified in pursuing him for the purpose of continuing the affray. In this case the defendant was acting in the role of an outlaw and hold-up. He was endeavoring to, and in fact was in the act of, robbing a couple of blameless and inoffensive men, and, when he was told to put up his hands, he was in effect placed under arrest; and the killing of these men, under the circumstances as related by himself in order to make his escape, was just as culpable and indefensible as though he had, without warning, shot them down when he first entered the car." State v. Shockley, 29 Utah 25, 80 P. 865, at pages 869 and 870.

and referring to the continuous nature of the transaction from its inception to the end of the fatal shooting, the court said:

"In concluding the discussion of this branch of the case, we have no hesitancy in saying that, according to defendant's own testimony, which, as hereinbefore stated, we must assume to be true, from the time he entered the car and told the occupants to throw up their hands, and until he killed Brighton, there was not a moment that either Gleason or Brighton would not have been justified in shooting him down—first, for the protection of their own persons and lives; and, second, to prevent his escape." State v. Shockley, 29 Utah 25, 80 P. 865, at page 870.

Assignments Nos. 27 and 28 complain of the refusal of the court to give certain instructions requested by the defendants, charging in effect that in addition to showing that the killing was perpetrated while defendants were attempting to commit robbery, to warrant a conviction the evidence must show that it was done with malice aforethought, and complain of the giving of instruction No. 10.[1]

---

1. "Instruction No. 10
"Again referring to the statute classifying murder into two degrees, and which statute I quoted in Instruction No.

8, you will observe that it also makes murder 'committed in the perpetration of or attempt to perpetrate arson, rape, robbery, burglary, kidnapping or mayhem

Specifically it is assured that instruction No. 10 does not make malice aforethought an element of murder in the first degree as therein defined. That is, the word "murder" as used to describe the killing in the first paragraph is omitted from the other three paragraphs and that, therefore, these later paragraphs would make murder of the first degree of any killing so committed regardless of whether it was accompanied with malice aforethought. Malice aforethought is an essential ingredient of murder, but we do not think the jury was misled by this instruction. By instruction No. 3a, the jury was charged that the prosecution is required to prove every essential element of the crime charged beyond a reasonable doubt; in No. 4, that "murder is defined by our statute as the unlawful killing of a human being with malice aforethought;" in No. 5, malice was defined; in No. 6, § 18-4002, I.C. was given, defining express and implied malice; and in in-

struction No. 7, they were correctly advised that:

"In case of homicide committed by the use of a deadly weapon, the law presumes malice and casts upon the person or persons responsible for the homicide the burden of repelling the presumption of malice, unless there is other evidence in the case which shows that the killing was done without malice."

It does not seem possible that the jury could have been misled to the conclusion that malice might be dispensed with. State v. Singleton, 66 Ariz. 49, 182 P.2d 920.

By assignments Nos. 29, 30 and 31, the appellants contend that the jury and the court abused their respective discretions in imposing the death penalty, in view of surrounding facts and circumstances including circumstances of mitigation, and that the evidence is insufficient to

* * *' murder of the first degree.

"In other words, if a person while in the course of committing or attempting to commit any one of the crimes specified, takes the life of another person, it is murder of the first degree.

"In such a case the law, in effect, says to the person or persons so engaged: 'If, in your perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, you take the life of a fellow being, whether intentionally or unintentionally, your crime is murder of the first degree.

" 'The killing may be wilful, deliberate and premeditated or it may be absolutely accidental. In either case you are guilty of murder of the first degree. This is so because the killing having been done in the perpetration or attempted perpetration of one of the felonies specified in the statute, it is an unlawful killing and the malice and the malignant heart are shown from the very nature of the crime you committed or were attempting to commit.' "

sustain the verdict of first degree murder with punishment of death. In support of these assignments they reassert the theory of their defense and maintain that the evidence shows they had in good faith abandoned the attempt to rob, had made that fact known to McCurry and were seeking to flee the premises; that McCurry used unnecessary force in his resistance in menacing the life of Owen after such abandonment and that thereafter the killing was in self-defense. Insofar as there is a conflict in the evidence concerning the details of this transaction, it was for the jury to determine the actual facts. It was likewise the jury's province to determine the ultimate facts or the conclusions of fact to be drawn from the evidence. In other words, it was for the jury to say whether the appellants' theory of defense was supported by the facts. They were not required to accept the theory of self-defense. State v. Cates, 97 Mont. 173, 33 P.2d 578; Rowe v. U. S., 164 U.S. 546, 17 S.Ct. 172, 41 L.Ed. 547; State v. Broadhurst, 184 Or. 178, 196 P.2d 407. As we have heretofore noted, assuming the facts as stated by the defendants themselves, their defense has little, if any, support in the evidence, except in a theoretical sense. Under our law, questions of fact must be decided by the jury. § 19–2131, I.C.

"This court, through a long line of decisions, has repeatedly held that where the evidence is in conflict but is sufficient to support a conviction, the verdict of the jury, whose exclusive province it is to pass on the facts, will not be disturbed. State v. Gilbert, 65 Idaho 210, 142 P.2d 584; State v. Kleier, 69 Idaho 278, 206 P.2d 513." State v. Eikelberger, 71 Idaho 282, at page 288, 230 P.2d 696, at page 700.

The appellant Hastings has filed a supplemental brief assigning errors in his own behalf, additional to those assigned by appellants jointly. He asserts that the information in the light of the evidence does not state facts sufficient to charge a crime against him; that instruction No. 10 is erroneous when applied to him. These assignments are based upon the contention that, since he did not do the actual killing, the essentials of malice, premeditation and deliberation on his part was that imposed by law because of his participation in the attempt to commit robbery; and that, since the evidence shows that he had withdrawn and left the premises prior to the shooting, he could not be charged and convicted upon evidence which otherwise would be sufficient against an accessory. § 19–1430, I.C., provides:

"The distinction between an accessory before the fact and a principal and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall here-

after be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal."

Under this section Hastings was properly charged, tried and convicted as a principal. There is a dispute in the evidence as to whether he had left the premises before the fatal shot was fired or at about the same time. This was a question for the jury. But, assuming that he was a few paces ahead of Owen in flight, would that fact relieve him? We think not. He was equal in guilt with Owen. Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 12 A.L.R.2d 183; State v. Adams, 339 Mo. 926, 98 S.W.2d 632, 108 A.L.R. 838; Annotation 108 A.L.R. 847; Annotation 22 A. L.R. 850; 26 Am.Jur., Homicide, §§ 66, 67 and 69.

Hastings also complains of instruction No. 21.[2] The instruction is a correct statement of the law as applied to one in Hastings' position. In fact, the last paragraph is a more favorable application of the rule to the defendant Hastings than he was entitled to under the facts appearing here. Hastings emphasizes the statement in the instruction that "such defendant must have abandoned the criminal enterprise before the robbery was in course of consummation." This is the correct statement when applied to the facts. We are not here concerned with its correctness as an abstract principle applicable in all cases or to cases in which the would-be robber had exercised an opportunity to abandon his purpose under circumstances

2. "Instruction No. 21
"In order for a defendant who has conspired with another to commit a robbery to avoid responsibility for a homicide which occurs during the course of the robbery or attempted robbery, such defendant must have abandoned the criminal enterprise before the robbery was in the course of consummation.

"The abandonment must be such as to show not only his determination to go no further but also such as to give his co-conspirator a reasonable opportunity to follow his example and refrain from further action before the robbery is attempted.

"A conspirator can not escape responsibility for an act which is the natural result of a common scheme which he has helped to devise and to carry forward because as the result either of fear or even of a better motive he concludes to desist or flee at the very instant when the robbery is about to be committed and when the transaction which immediately begets it has actually been commenced.

"On the other hand if you find from the evidence that the defendant Owen shot said Bert McCurry and that prior to the time of such shooting the defendant Hastings had abandoned the criminal enterprise, then such shooting was the act of the defendant Owen alone, and the defendant Hastings would have no legal responsibility therefor."

420

where such abandonment was complete and known to the intended victim before any counterattack occurred. As was said in discussing the facts from the standpoint of Owen, if from the vigor of the counterattack there was no opportunity to abandon the robbery or to make such abandonment known to the deceased before the homicide, that was a misfortune, but one of the calculated risks which both appellants assumed when they entered upon the plan to rob McCurry. The situation in which they found themselves was the creature of their own criminal act, the consequences of which they must bear. 26 Am.Jur., Homicide, § 135.

In his last assignment, appellant Hastings assigns the ruling of the trial court in denying his motion for a separate trial. The motion was based upon his contention and showing that he had abandoned the robbery and fled the premises before the fatal shots were fired; that he was no longer an accessory; that he would for that reason be prejudiced before the jury were he tried jointly with appellant Owen; and further that he desired to be sworn and testify in his own behalf and further desired to have the defendant Owen testify as a witness for him. As to the first contention that he was not an accessory and would be prejudiced by joint trial, what we have said heretofore disposes of that question. As to the second, the statute provides as follows:

"When two or more defendants are jointly indicted or informed against for a felony or for any criminal offense, the defendants may be tried separately or jointly, in the discretion of the court." § 19–2106 I.C.

This court has held that it is not an abuse of discretion to refuse a separate trial where each defendant desires to be a witness for the other as well as for himself. State v. Allen, 23 Idaho 772, 131 P. 1112; State v. Fox, 52 Idaho 474, 16 P.2d 663. To justify a reversal on such ground, some prejudice arising out of the joint trial should be made to appear. State v. Huskinson, 71 Idaho 82, 226 P.2d 779. We find no such prejudice shown by the record in that regard.

After a careful examination of the entire record, the evidence, proceedings and instructions of the court, we find that the defendants had a fair and impartial trial so far as concerns the question of their guilt. The two errors, which we have noted, concern only the determination of punishment. A consideration of these in connection with the entire record has induced us to conclude that the ends of justice will be served by commutation of the sentence. § 1–205, I.C.; State v. Ramirez, 34 Idaho 623, 203 P. 279, 29 A.L.R. 297; State v. Behler, 65 Idaho 464, 146 P.2d 338.

It is, therefore, ordered that the judgment be modified to provide for imprison-

ment in the State Penitentiary for life in lieu of the death penalty, and, as so modified, the judgment is affirmed.

PORTER, C. J., and THOMAS, J., concur.

GIVENS, Justice (dissenting).

I concur, except as to the reduction of the penalty.

The testimony rejected as to both appellants has been sufficiently stated in the majority opinion. Suffice to notice that both appellants were permitted to give some testimony as to their past environment, upbringing, etc., and the only rejection as to appellant Hastings was the long, detailed account of his claimed military record.

The statement in the majority opinion is correct:

"And § 19–2516, I.C. requires that the hearing be had in open court. It may be open to debate as to whether the 'circumstances' mentioned in § 19–2515, I.C. refer particularly to circumstances surrounding the commission of the crime and tending to aggravate or mitigate the character of the conduct involved, or whether such circumstances include also the convict, himself, as an individual, which would include his background, his age, upbringing and environment or any other matter appropriate to a determination

of the degree of culpability. We think that the statute should be given the broader interpretation, particularly in a capital case." 253 P.2d 207.

This court undoubtedly has the right and authority to reduce the penalty. However, it will be noted in State v. Ramirez, 34 Idaho 623, 203 P. 279, 29 A.L.R. 297, cited in support of reduction generally and herein, the court therein considered the facts of the case in applying the rule:

"* * *, and every consideration of justice demands that this court determine its power * * * to reduce the punishment in this case, and that the punishment be reduced if the *facts* do not warrant the imposition of the death penalty." (Emphasis ours.) 34 Idaho at page 631, 203 P. at page 281, 29 A.L.R. 297.

The evidence may be reviewed to determine its sufficiency to support the verdict, and

"* * * to determine whether it justifies the infliction of the death penalty." 34 Idaho at page 634, 203 P. at page 282.

"Causes have frequently found their way into the appellate court, where error had been committed in the trial, not prejudicial error or such as would warrant a reversal of the cause, but which has resulted in the infliction of excessive punishment." 34 Idaho at page 636, 203 P. at page 283.

"Without reciting in detail all of the facts and circumstances involved in the trial of this cause, and specifically pointing out errors which were not reversible, but which may have influenced the jury in assessing the extreme penalty, it is clear to our minds that the jury abused its discretion in so doing." 34 Idaho at pages 637–638, 203 P. at page 284.

Conceding the trial court erred in unduly restricting the testimony offered by appellants as to their past, unless the introduction of such evidence could legitimately have affected the jury in the exercise of its discretion, such rejection does not constitute reversible error or authorize or justify reduction of the penalty, contrary to the verdict of the jury. Both appellants admitted in open court they entered deceased's store with intent to rob and the evidence shows, as indicated in the majority opinion, the killing was done in the course and perpetration of the robbery. Previous good conduct cannot wipe out the established and uncontroverted fact that this killing, under the statute, was murder of the first degree and certainly the jury had complete authority to fix death as the appropriate penalty.

This court has repeatedly, under such circumstances—that is, as to this state of the record—declared and applied this rule:

"Although the instruction referred to contains matter which should not have been given to the jury, we are, however, of the opinion that the appellant could have been in no way prejudiced by the giving of such instruction. Other instructions were given to which no exception was taken, which clearly charged the jury with reference to circumstantial evidence; and not only that, but the evidence in. this case is so clear and convincing of the guilt of the appellant that the jury could in no * * * manner have been influenced to return a verdict of guilty by the objectionable matter contained in this instruction; and from the evidence the jury could not, without a violation of their oaths, fail to have found the defendant guilty, and because of this the defendant could not have been prejudiced by the giving of such instruction." State v. Marren, 17 Idaho 766 at page 790, 107 P. 993 at page 1001. State v. Silva, 21 Idaho 247 at page 257, 120 P. 835; State v. Brill, 21 Idaho 269 at page 275, 121 P. 79.

"Where the evidence in a given case clearly shows the defendant to be guilty of an unprovoked murder, without any justification or excuse, and the jury could not, under their oaths, have brought in any other verdict than was rendered by them, even conceding that there is error in the instructions, and the right of the appellate court to review such errors when not assigned, the judgment of the trial court should

not be reversed, for the reasons as announced in an opinion by the late Justice Stewart in the case of State v. Marren, 17 Idaho 766–790, 107 P. 993, 1001 :" State v. Lundhigh, 30 Idaho 365 at page 377, 164 P. 690 at page 694.

State v. Ward, 31 Idaho 419 at page 422, 173 P. 497.

"When we consider the character of the testimony offered in this case, and the view the jury must necessarily have taken with regard to it, we are unable to see how they could have been prejudicially influenced against the appellants by reason of such errors as it must be conceded the trial court made. Appellant Lo Ming did not testify. Appellant Dong Sing admittedly was in the laundry immediately before the killing, and if his story had been believed by the jury, they could have done nothing but acquit appellants. There was no room for a verdict of murder of the second degree or manslaughter. Having rejected Dong Sing's testimony, there was no alternative for the jury, if they believed the evidence offered by the state, but to find appellants guilty of murder of the first degree. In the whole record there is nothing suggestive of any fact that would warrant the conclusion that appellants could be guilty at all without being guilty of murder of the first degree. It is true the jury might arbitrarily have convicted defendants of murder of the second degree or of manslaughter, just as they might arbitrarily have acquitted defendants even though convinced beyond a reasonable doubt of defendants' guilt, but, on the facts accepted by them as established by the evidence, and on their oaths as jurors they could have found no other verdict than that of murder of the first degree.

"C.S. § 9084, provides that—'After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.' And C.S. § 9191, provides that—'Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right.'

"Commenting on these statutes this court has said: 'The substance of these statutory provisions is that a new trial ought never to be granted, notwithstanding some mistake or even misdirection by the judge, provided the revisioning court is satisfied that justice has been done and that upon the evidence no other verdict could properly have been found.' State v. Marren, 17 Idaho [766] 791, 107 P. [993]

1001." State v. Dong Sing, 35 Idaho 616, at page 633–634, 208 P. 860 at page 865.

"It is suggested in appellant's brief that in both the opening and closing arguments the prosecuting attorney referred to the fact that the defendant did not take the stand and testify. There is no record of what the prosecuting attorney said in either argument, but there is contained in the reporter's transcript an objection, by appellant, to a remark by the prosecuting attorney 'with relation to the defendant not presenting any evidence in his behalf. * * *' The court sustained the objection and told the jury the fact referred to should not be considered by them. It was improper for the prosecuting attorney to make the remark which he is credited with having made, and every trial lawyer knows that such an admonition by the court is not ordinarily sufficient to erase from the minds and memories of the jurors such improper remarks. It is probably not too much to say that the remark of the court rather tended to impress the fact upon the minds of the jurors. It would not be proper in this case, however, to reverse the judgment because of this misconduct. The evidence is such that the jury could not have reached any other verdict than that of guilty. The misconduct of the prosecuting attorney, though flagrant, does not justify the reversal of a judgment where the evidence is so conclusive that the jury could not have been misled." State v. Cosler, 39 Idaho 519 at page 528, 228 P. 277 at page 280.

State v. Stewart, 46 Idaho 646 at page 651–652, 270 P. 140, is readily and completely distinguishable from the situation herein.

The conclusion herein is not out of harmony with State v. Taylor, 59 Idaho 724 at page 737, 87 P.2d 454, because herein appellants' own evidence proves their guilt beyond any doubt and no sufficient, if any, mitigation could properly be rested on the rejected testimony.

"On the whole record we do not think there was reversible error in the matter complained of.

"In the case of State v. Brill, 21 Idaho 269, 121 P. 79, 80, this court said: '* * * This court held, in State v. Marren, 17 Idaho 766, 107 P. 993, that, even though an instruction is erroneous, and ordinarily the error would be material, yet, if the evidence of the defendant's guilt is satisfactory—that is, such as ordinarily produces moral certainty or conviction in an unprejudiced mind—and the result would not have been different, had the instruction been omitted, the case will not be reversed because of such erroneous instruction.' The same principal is applicable here.

"Section 19–2719, I.C.A., provides:
'After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.'" State v. Gilbert, 65 Idaho 210 at page 219, 142 P.2d 584, at page 588.

Though in a dissent, this statement most pertinently, succinctly and forcibly states the court's proper function:

"'* * * question for Supreme Court's consideration was not whether Supreme Court would have imposed death penalty, but whether discretion vested in trial court was judicially exercised and whether record showed a case in the class justifying sentence of death or in the class justifying sentence of life imprisonment.'" State v. Behler, 65 Idaho 464 at page 477, 146 P.2d 338 at page 344.

In State v. Powell, 71 Idaho 131 at page 136, 227 P.2d 582 at page 585—

"* * * it was recognized that before this court could act (to reduce the penalty), there must appear an abuse of discretion."

and recognized the force and effect and correctness of the above statement in State v. Behler, supra, thus:

"In State v. Behler, supra, Justice Budge, the author of the opinion in State v. Ramirez, supra, in his dissenting opinion, called attention to this fact."

The judgment and penalty as fixed by the jury should be affirmed.

KEETON, Justice (dissenting).

I am of the opinion that the judgment of conviction should be reversed and a new trial ordered—this not only in fairness to the state, but also to the appellants. There is no precedent that has been called to our attention where the penalty imposed was reduced because of erroneous rejection of offered testimony, or reversible errors committed.

I do not concur in the holding that the errors assigned and complained of, and by the majority opinion found to exist, can only be material as effecting the punishment to be imposed. The real question presented is whether or not the guilt of the appellants has been established in the manner and by the procedure provided by law, long recognized and established, and based on experience and sound reasoning.

We should never lose sight of the fact that the guilt or innocence of appellants and the degree of crime are questions in the first instance to be determined by the jury. Our inquiry concerns the method, means and procedure by which the guilt was established and punishment imposed.

If the appellants were convicted, or might have been convicted, and the death penalty imposed, because of errors in the

proceedings taken against them, then it must be apparent to all that every other person similarly situated and placed on trial would be in exactly the same position; and the rules of law and procedure adhered to here must, of necessity, be applicable to all other persons.

Under our rules of law and procedure, well recognized and established, before a person's liberty or life can be taken, it is necessary that he first be tried in a court of competent jurisdiction, before an impartial jury. When such a jury is impaneled, it is the exclusive judge of the facts—and in this particular proceeding, may, if it sees fit, determine the punishment to be imposed.

Trial means a fair trial; that is, the accused's legal rights, during the proceedings had, must be safeguarded and respected, not alone in the observance of the naked forms of law, but in the recognition and just application of the principles applicable to the case. Until such time as an accused has been so tried and found guilty, he cannot be legally convicted.

While some of the errors assigned are without merit and have been correctly disposed of in the majority opinion, there are some propositions presented which I shall briefly discuss.

During the proceedings taken against the appellants, each was sworn to testify in his own defense. For the purpose of impeachment, each was asked whether or not he had formerly been convicted of a felony. Each answered in the affirmative. On cross-examination, appellants, over objection, were required to answer the name and nature of the felonies so committed. This, in my opinion, was reversible error, and contrary to prior holdings of this court. Cases from other jurisdictions announcing a contrary rule are not necessarily authoritative. Statutes in different states covering the same subject matter are not worded identically. Some statutes specifically provide that a defendant when he testifies may be impeached the same as any other witness. Our statute does not so provide. This distinction, with a summary of the statutes of various states, is ably discussed by Justice Miller in State v. Branch, 66 Idaho 528, 164 P.2d 182, in which case this court concluded that the statute permitting the impeachment of a witness is not applicable to a defendant in a criminal action. The reason for this is very apparent. Such an examination is highly prejudicial and is wholly collateral to the matter being investigated. Such impeachment, if permitted, must of necessity permit the jury to avoid or confuse the issues, and return a verdict based on general principles, or because of prior crimes, knavery and malicious conduct indulged in by the accused. I consider the rule announced in the Branch case, supra, sound, and I am of the opinion it should not be overruled.

If, however, a defendant in a criminal action, or a witness is to be impeached because of prior felonies committed, such impeachment should be limited to the fact that he has been so convicted and the name or details of the particular crime of which he was formerly convicted and punished should not be inquired into. In other words, when the witness answers he has been convicted of a felony, the examination or cross-examination in this regard should end. See State v. Coloff, Mont., 231 P.2d 343; State v. Quinlan, Mont., 244 P.2d 1058. There is no case in Idaho, prior to this decision, which holds the particular felony, or the details of the crime are proper subjects to be introduced for impeachment purposes.

Every attorney, with even limited experience in criminal practice, knows that impeachment of an accused in a criminal case is not, in fact, the real purpose of the examination. It simply pictures the misconduct and villainy of the accused and prejudices the jury by injecting hate into the proceedings.

Further there was no instruction given the jury advising it the purpose of the alleged impeaching testimony, or which limited it to the testing of the credibility of the appellants; and the testimony encouraged the jury to convict and impose the death penalty because of prior crimes and mischief, and former malicious conduct of appellants.

The testimony regarding the felonies of which appellants had been previously convicted did not have the remotest connection with the crime of which appellants stood charged. I assume, without citations of extensive authority, that it is well recognized the commission of other crimes has no pertinent bearing on whether or not an accused is guilty or innocent of the particular offense being investigated. See State v. Garney, 45 Idaho 768, 265 P. 668; State v. Machen, 56 Idaho 755, 58 P.2d 1246; State v. Miller, 60 Idaho 79, 88 P.2d 526; State v. Jones, 62 Idaho 552, 113 P.2d 1106. The other crimes herein testified to by the appellants were in nowise linked to, or connected with, the crime with which the appellants stood charged.

After this prejudicial and improper evidence was admitted, the appellants made an offer of proof which is set forth in the majority opinion. I shall not repeat it here. The testimony so offered and excluded by the learned trial judge, was in substance admissible in any case, particularly after the appellants had been so pictured as entirely devoid of all social virtue.

In this proceeding the appellants were charged with first degree murder. Punishment could be fixed by the jury at life imprisonment or death. Certainly all material evidence that could in anywise tend to mitigate the crime, or lessen the punishment, including generally the testimony which the appellants and each offered, should, in my opinion, in all fairness be

admitted. As the proceedings then stood, the jury had a picture of many delinquencies, much misconduct and malicious mischief and conniving by the appellants, and they were then entitled, if for no other reason, to be heard on matters which might show some virtue or conduct that would offset· or tend to ameliorate the testimony already in evidence. This rule is stated in 53 Am.Jur. 373; Sec. 467, as follows:

"Where the accused is tried under a statute permitting the jury in its discretion to recommend the defendant to mercy and thereby reduce his punishment, it is the right of counsel for the defendant to argue such a recommendation to the jury. It is likewise the right and duty of counsel for the defendant in appealing for life imprisonment instead of the death penalty to discuss the defendant's age, his upbringing and environment, and all other matters appearing from the evidence which may assist the jury in choosing the appropriate penalty. On the other hand, counsel for the state have the same right to argue that the recommendation should be withheld, although insistence by the prosecution, in connection with language designed to inflame the jury, that the defendant be found guilty without recommendation of mercy has been held prejudicial."

In a criminal action, a defendant's age, upbringing, environment and his background are of a material nature in any case, and the appellants should have been permitted to testify in substance in accordance with the offer of proof. This rule is recognized in the majority opinion and the conclusion drawn that such testimony only goes to the penalty to be inflicted. I do not so interpret it. I think such testimony admissible in any criminal case regardless of whether or not the jury is empowered to determine the penalty. For authority, see 70 C.J. 762, Sec. 919; 53 Am.Jur. 373, Sec. 467; Commonwealth v. Brown, 309 Pa. 515, 164 A. 726; Commonwealth v. Williams, 307 Pa. 134, 160 A. 602; Smith v. People, 32 Colo. 251, 75 P. 914; People v. Mangano, 375 Ill. 72, 30 N.E.2d 428; People v. Lane, 300 Ill. 422, 133 N.E. 267; People v. Heffernan, 312 Ill. 66, 143 N.E. 411.

Under circumstances where it is the duty of the court to fix the penalty, an inquiry into facts or circumstances in mitigation or aggravation is expressly provided for. Sec. 19–2515, I.C. reads as follows:

"After a plea or verdict of guilty, where a discretion is conferred upon the court as to the extent of the punishment, the court, upon the oral suggestion of either party that there are circumstances which may be properly taken into view either in aggravation or mitigation of the punishment, may, in its discretion, hear the same summarily, at a specified time, and upon such notice to the adverse party as it may direct."

and a similar provision relative to an investigation and examination made to precede probation or suspension of sentence is provided for in Sec. 20–220, I.C., which reads:

"When a probation and parole officer is available to the court, no defendant shall be placed on probation until a written report of investigation by a parole and probation officer shall have been presented to and considered by the court, and no defendant charged with a felony or indictable offense shall be released under suspension of sentence without such investigation. The parole and probation officer shall inquire into the circumstances of the offense, criminal record, social history and present condition of the defendant. Whenever practicable, such investigation shall include a physical and mental examination of the defendant. If a defendant is committed to any institution, the probation officer shall send a report of such investigation to the institution at the time of commitment."

In the proceedings taken against the appellants, the jury was permitted to fix the penalty without any background or mitigating circumstances which could and should have been properly considered. If the court, in fixing the penalty, is entitled to know all facts or circumstances in mitigation, why, when the jury fixes the penalty, should it not be allowed to hear and consider such matters?

In the argument to the jury the prosecuting attorney used the following language:

"It is rather ridiculous to me that they (referring to appellants) say they couldn't hock their watches. What excuse did they have for doing this? Now, we know what the men have done in this case, and it comes back to the same thing. They have no respect for society. Both of these defendants are *leeches off society,* as it were, by perpetrating robbery. Does society have any duty to these men? They have leeched off of society in the past. Should these men continue to do that? Should they be supported by the State of Idaho?" (Emphasis supplied).

In other words the prosecutor was arguing because of prior crimes and misconduct, shown by the evidence and improperly admitted, that the appellants should be convicted and hanged. Such remarks and argument should be avoided. The language used was intemperate and was probably the result of the tension under which the prosecutor labored.

It should be remembered that the appellants were on trial for their lives and they should not have their cause prejudiced by intemperate remarks that might warp the judgment of the jury. The parties did not stand on equal footing, and appellants had no way to answer.

No person should be put to death because, should he live, the state would have to support him.

430

Commonwealth v. Clark, 322 Pa. 321, 185 A. 764; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Edwards v. Commonwealth, 298 Ky. 366, 182 S.W.2d 948.

It is far more important for society to accord a defendant in a criminal action a fair trial than he forfeit his life in expiation of the crime.

The rules of law and procedure which apply to the appellants are, and should be, measured by the same yardstick and exactly the same standards as apply to all other persons; and in determining the appellants' rights, we necessarily measure and determine the rights of all others who might be similarly situated. A fair trial for those accused of crime protects the liberties of all.

I shall not discuss in detail the assignments of error relative to some instructions given and others refused. Some of the requested instructions should have been given; it was reversible error to give others, and I consider this another reason why the judgment should be reversed. As the case is not to be retried, a detailed discussion of these errors would serve no useful purpose.

Some of the errors assigned in this proceeding were neither trivial nor imaginary, but were substantial and went to the important question of whether or not the appellants had a fair trial.

I cannot help but feel that the precedent established by the majority opinion will, like Banquo's ghost, rise again and again to plague us.

If a person in a civil matter is wrongly deprived of his property, or a person in a criminal proceedings wrongly convicted of a less serious crime, it might be possible in some way to partially rectify the wrong done. Were the sentence imposed in this proceeding executed, regardless of how wrong it might be, no rectification could ever be made. It is impossible to call back the dead.

The judgment of conviction should be reversed, and a new trial granted.