[Crim. No. 4193. In Bank.—January 26, 1939.]

THE PEOPLE, Respondent, v. CLAUD DAVID, Appellant.

Edmund M. Moor for Appellant.

U. S. Webb, Attorney-General, Ralph H. Cowing and J. Q. Brown, Deputies Attorney-General, and Clair Engle, District Attorney, for Respondent.

EDMONDS, J.—By indictment, the defendant was charged with the crime of murder and with a violation of section 2 of the Concealed Weapons Act. (Stats. 1923, p. 695, as amended.) Upon his sole plea of not guilty by reason of insanity, he was tried by a jury and found sane. After hearing additional evidence, the trial judge determined the degree of the crime to be that of murder of the first degree without mitigating or extenuating circumstances, and rendered a judgment imposing the death penalty. Under the provisions of section 1239 of the Penal Code, an appeal from that judgment was automatically taken to this court.

From the facts shown by the defendant's admissions and by numerous connecting circumstances, the crime appears to have been committed deliberately and in cold blood. For several weeks before the crime, the defendant had been dickering with Earl Cofer for the purchase of some field glasses and other articles. On the fatal day, at the defendant's request, Cofer came to the ranch where the defendant worked as a farm hand. Shortly after his arrival, the defendant suddenly confronted him with a pistol and bound his hands together with wire. The defendant then went into the house, changed his clothes, returned and drove Cofer along a lonely road. There he took him out of the automobile and smashed his skull with the stock of a rifle, leaving him dead beside the road. There was evidence tending to show that he robbed the deceased of a watch and some $30 in cash. Under these circumstances the trial judge was warranted in imposing a

death sentence, the jury having found the defendant sane at the time the crime was committed.

As grounds for reversing the judgment the defendant contends that persons on the panel from which the jury was drawn were prejudiced against him by reason of the fact that at the trial a deputy sheriff was seated immediately behind him; that the district attorney was guilty of prejudicial misconduct in his questioning of witnesses and in his argument to the jury; and that certain testimony was erroneously admitted into evidence. No claim is made that the evidence was insufficient to support the jury's finding of sanity.

At the outset of the trial the defendant was brought into the courtroom by the sheriff and his deputies. The panel from which the jury was to be selected was present, and as the defendant took his seat inside the rail one of the deputy sheriffs drew up a chair immediately behind him. Counsel for the defendant moved to discharge the panel upon the ground that the conduct of the deputy sheriff had created prejudice in the minds of the prospective jurors. The court requested the deputy to move back to the rail and denied the defendant's motion. The defendant contends that because of the misconduct of the deputy sheriff and the refusal of the trial court to discharge the jury panel, he was deprived of a fair trial. In this connection he relies upon *People* v. *Harrington,* 42 Cal. 165 [10 Am. Rep. 296]. But the facts in that case which, it was held, tended to bias the jury were vastly different from those shown in the present one. There several defendants, who were on trial for robbery, were brought into the courtroom with their legs in irons. The trial court denied a request that they be unshackled during the trial. This ruling was held to constitute reversible error in the absence of a showing of necessity for such precautions. In the case now before the court it does not appear that in the position he took in the courtroom, the deputy was even touching the defendant, and there is nothing to show that his conduct prejudiced the defendant in any way.

During the trial the defendant's mother took the witness stand in his behalf and testified concerning various portions of his life, omitting only two periods. In each of these he was serving a sentence imposed upon him after he was convicted of a felony. During the cross-examination of this

witness, after the district attorney had questioned her further concerning her son's life, the following occurred: "Q. I am talking about sixteen. A. After seventeen I didn't see him very often. Q. Where was he after seventeen years of age? Mr. Moor: I will object to that question . . . for the reason that it is an attempt to prejudice and bias the defendant. Counsel well knows the answer, for the reason that certain of the pleas were not read in court this morning. Mr. Engle: If counsel thinks he is going to be able to keep out of this record the fact that this defendant was in the State Prison at San Quentin and in a Federal Government jail, he is all wrong, and if that is prejudicial error to have it in, we will have to commit it, because this woman has testified—Mr. Moor (interrupting): I cite the statement of the District Attorney as misconduct and prejudicial error, an attempt to prejudice the defendant." The court sustained the objection to the question and, at the request of the defendant, cautioned the jury to disregard the district attorney's remark. On several later occasions the district attorney adverted to the same line of inquiry but was stopped by timely objections interposed by counsel for the defendant.

The prosecution's claim that these questions were within the proper scope of cross-examination cannot be sustained. No part of the direct examination had referred to this portion of the defendant's life, and the trial court's rulings were entirely correct. ■ But it does not follow that the defendant is entitled to a reversal of the judgment. The jury was admonished to disregard the district attorney's direct allusions to the defendant's prior convictions. Furthermore, the defendant was being tried solely upon the question of his sanity at the time the offense with which he was charged was committed, and a reference to those matters was less calculated to bias the jury than if his guilt or innocence had been in issue. Moreover, at a later time when the defendant was a witness in his own behalf, he was properly asked about the prior convictions. His criminal record was shown by his own testimony which was admissible to impeach him; therefore, the examination of the mother, which brought out only the same facts, does not constitute reversible error. (Const., art. VI, sec. 4½.)

■ When the defendant took the witness stand in his own behalf, upon cross-examination, reference was made to his previous convictions, but the prosecution was not allowed to go beyond the fact of such convictions and the nature of the crimes committed. ■ In this state the testimony of a witness may be impeached by proof that he has suffered the prior conviction of a felony. (Code Civ. Proc., sec. 2051.) This rule applies to a defendant who testifies in his own behalf in a criminal trial notwithstanding the fact that such evidence tends to prejudice him in the eyes of the jury. (*People* v. *Romer*, 218 Cal. 449 [23 Pac. (2d) 749]; *People* v. *La Verne*, 212 Cal. 29 [297 Pac. 561].) The nature of the crime or crimes of which he was convicted is a proper subject of inquiry in establishing the fact of his conviction. (*People* v. *Higbee*, 78 Cal. App. 455 [248 Pac. 927]; *People* v. *Craig*, 196 Cal. 19 [235 Pac. 721].) But details and circumstances comprising the prior offenses are not admissible. (*People* v. *Eldridge*, 147 Cal. 782 [82 Pac. 442]; *People* v. *Muchupoff*, 79 Cal. App. 306 [249 Pac. 240].) The record in this case shows that the cross-examination with respect to the defendant's prior convictions was properly curtailed in compliance with these rules.

■ At the time of the trial an indictment for robbery was pending against the defendant growing out of a separate incident which occurred ten days prior to the alleged murder. One Ballarena, the complaining witness, charged that the defendant came to his cabin late at night, confronted him with a gun; bound his hands behind him with wire, forced him to ride around the countryside; finally robbed him of about $15 and threatened to kill him if he reported the matter to the authorities. During the cross-examination of the defendant the district attorney, over the defendant's objection, questioned him concerning this incident, and the defendant replied: "I was supposed to have held the man up but I don't remember" and "They said that I went over there but I don't remember." Upon advice of counsel the defendant then refused to answer any more questions pertaining to this affair, but the district attorney persisted in alluding to the same subject-matter in several subsequent lines of inquiry. The defendant's claim that this constituted prejudicial misconduct cannot be sustained, for the attempted inquiry ap-

pears to have been within the proper scope of cross-examination. It was the theory of the defense that the defendant was suffering from amnesia at the time he killed Earl Cofer. Upon direct examination he testified that on different occasions throughout his life he had suffered from mental lapses, that he had no recollection of the killing but realized that he must have done it when he found himself standing over the body of the deceased at the scene of the crime. He also denied having robbed Cofer and was unable to assign any motive for his conduct. The Ballarena robbery was so close to the murder in point of time and was so similar in its *modus operandi* that proof of his conduct and state of mind during that incident tended to contradict the defendant's testimony both as to motive and mental lapse.

A cognate question is raised by the defendant's contention that the testimony of Ballarena concerning the details of the robbery was improperly admitted into evidence. While it is true that evidence of particular wrongful acts is not generally admissible where the defendant has not put his character in issue, it seems clear that under the circumstances of this case the evidence was properly admitted. The prosecution was entitled to show not only a motive for the crime but a deliberately conceived plan to carry it out. As shown by the evidence the acts of the defendant were substantially the same on both occasions. In each case a gun was held on the victim, his hands were tied behind him with wire and he was forced to ride in his own car over various roads in Tehama County. In each case the defendant made the claim that he was unable to remember the details, although he later confessed to a knowledge of the details of the robbery. By producing Ballarena the prosecution presented evidence concerning the defendant's conduct and conversation in a similar transaction which had occurred only a few days prior to the death of Cofer.

Evidence which tends to prove a sane motive for the crime and an ability on the part of the accused to devise and execute a deliberate plan is material to the issue raised by a plea of not guilty by reason of insanity. (*People* v. *Sloper,* 198 Cal. 238 [244 Pac. 362]; *People* v. *Donlan,* 135 Cal. 489 [67 Pac. 761].) Furthermore, it is the rule that where a defense of insanity is interposed and evidence of the previous

conduct of the defendant is offered by him, the prosecution is not limited to an explanation or denial of the particular conduct of the defendant, but may offer evidence of other acts which he committed within a reasonable time before or after the crime as tending to show that he was sane at the time of the offense for which he is then being tried. (*People* v. *Willard,* 150 Cal. 543, 550 [89 Pac. 124] ; *State* v. *Spangler,* 92 Wash. 636 [159 Pac. 810] ; Wigmore on Evidence, 2d ed., vol. 1, p. 473.) The period of time over which an inquiry of this character should be extended is a matter which rests largely within the discretion of the trial court. (*People* v. *Kimball,* 5 Cal. (2d) 608, 611 [55 Pac. (2d) 483] ; *People* v. *Aranda, ante,* p. 307 [83 Pac. (2d) 928].)

As further grounds for reversal of the judgment the defendant contends that various other portions of the evidence introduced by the prosecution were erroneously admitted over his objections. A psychiatrist from the state prison at San Quentin was permitted to give an opinion concerning the defendant's mental condition at the time Cofer was killed, although the witness had not been present in court during the introduction of most of the defendant's testimony. But this fact went only to the weight of the witness' testimony. He had observed the defendant in routine examinations at San Quentin and, also, just before testifying, he examined the defendant in the county jail, where he was able to observe and talk to him at some length. In *People* v. *Delhantie,* 163 Cal. 461 [125 Pac. 1066], the evidence showed that six days prior to the trial one of the physicians who testified had observed the defendant for an hour. It was held that this was sufficient to warrant the court in allowing his opinion to go to the jury.

Certain letters written by the defendant while he was out of San Quentin on parole were admitted over objection. These letters were clear and rational and were shown to have been in the defendant's handwriting. Inasmuch as they clearly reflected his mental condition during the several months leading up to the crime, they were competent evidence. The claim that they were inadmissible because the prosecution failed to show that they were "the products of the defendant's mind" and not dictated by someone else, has no merit. One witness testified that he had helped the defend-

ant write letters, but it did not appear that these were the letters referred to. A sufficient foundation for the introduction of the letters was laid by proof of his handwriting, and the defense then had the right and was given the opportunity to explain them.

Also introduced by the prosecution were several transcribed statements of conversations between peace officers and the defendant which occurred after the latter had been taken into custody. When first questioned concerning the Ballarena robbery he doggedly denied any knowledge of it. Later he confessed to the commission of the crime in a statement showing a knowledge of all its details. He also confessed to the murder, but in this confession, as in his testimony at the trial, he maintained an inability to remember the events surrounding the actual killing of the deceased. Each confession clearly shows attempts to cover up the crimes after their commission. It is contended that this evidence was competent only to show that the defendant was aware that his conduct was wrongful, and since he had taken the witness stand and testified to such subsequent awareness, it is argued that the evidence should not have been admitted. But the transcripts of these interviews tended to prove more than a consciousness of guilt. They present a complete record of the defendant's conversations made several weeks after the commission of the offense, and indicate a logical and rational process of mind which was inconsistent with the defense of insanity.

As previously stated, the conduct and declarations of the defendant occurring within a reasonable time before or after the commission of the alleged act are admissible in proof of his mental condition at the time of the offense. Particularly is this so where the insanity sought to be proved is of a temporary character, for this is often the only factual evidence which the prosecution can bring to bear on the question. (*People* v. *Willard, supra;* 8 Cal. Jur. 51.) Because the extra-judicial declarations amount to confessions of the crime with which he is charged or of other crimes does not render them inadmissible. (*United States* v. *Chisolm,* 153 Fed. 808; *People* v. *Sloper,* 198 Cal. 238 [244 Pac. 362].)

Undoubtedly certain portions of this evidence, such as the defendant's first statement concerning the robbery

which was a persistent denial of all guilt, or the portion containing an extra-judicial identification of the defendant by a person who was not a witness at the trial, would not have been admissible had the defendant's guilt or innocence been in issue before the jury. But it was not offered in proof of the facts stated, but to show the defendant's reactions at a time shortly after the commission of the crime. The complete statements were competent evidence of his mental condition.

 The defendant's final contention relates to the conduct of the district attorney in his opening statement and argument to the jury. Objection is made to portions of the opening statement reciting evidence which the defendant claims was inadmissible. Instead of being a recitation of the facts which the prosecution expected to prove, many parts of the statement were more in the nature of an argument. But in opening his remarks the district attorney told the jury that his statement was not intended to be either evidence or argument and should not be taken by them as such. Under these circumstances, the remarks which he made were not so improper as to require a reversal, although, unquestionably, he overstepped the bounds of propriety. He dwelt at length upon the facts bearing upon the defendant's guilt, speculating in detail upon the manner in which the crime might have been committed, and indulged in rhetorical invective against the accused as though his guilt, rather than his mental balance, were in issue. Such conduct cannot well be justified in a proceeding to determine sanity, but it must be presumed that the jury followed the instructions which fully and fairly covered the real issues of the case and arrived at its conclusion upon a fair consideration of the evidence. There was ample testimony, both medical and lay, to support the verdict. The weight of this evidence tends strongly toward a conclusion that the defendant was sane at the time of the commission of the crime. The defendant was ably represented by counsel, and an examination of the whole record discloses that he was given a fair trial.

The judgment is affirmed.

Shenk, J., Curtis, J., Waste, C. J., and Seawell, J., concurred.