[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 539 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 540 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 541 
OPINION
A jury found appellant Lorenzo Stevens guilty as charged of assault with the intent to commit rape, sodomy, or oral copulation (Pen. Code,[1] § 220); furnishing a controlled substance to a minor (Health 
Saf. Code, § 11380, subd. (a)); and administering a drug to aid in the commission of a felony (§ 222). The jury also found several aggravating factors to be true. The court sentenced appellant to an aggregate term of 10 years four months in state prison, determined as follows: nine years for furnishing a controlled substance to a minor; a consecutive one-year four-month term for assault with the intent to commit rape, sodomy, or oral copulation; and a concurrent eight-month term for administering a drug to aid in the commission of a felony.
 Appellant asserts that the trial court erred in (1) stationing a deputy behind appellant during his testimony; (2) violating his right to confront the victim by allowing a support person to be present during the victim's testimony; and (3) erroneously sentencing him to the aggravated term for administering a controlled substance to a minor. As well, appellant maintains there is insufficient evidence to support his convictions for administering a drug to aid in the commission of a felony and furnishing a controlled substance to a minor. We affirm the judgment.
 I. FACTS On July 13, 2004, 14-year-old R.D. received a call from appellant, her father. Both parties met at a Taco Bell in Oakland and then walked to a truck *Page 542 
where appellant was living. The windows of the truck were covered, and the windshield was dusty and obscured. R.D. entered the truck and appellant began smoking what he called "crystal" from a pipe. Appellant told R.D. to take her pants off. R.D. refused, claiming that she was menstruating. Appellant then placed a "crystal" rock in R.D.'s mouth and told her to suck on it. She took the rock out of her mouth and placed it in her bra. Appellant sucked on the left side of R.D.'s neck. Appellant pulled his pants down and instructed R.D. to orally copulate him and pulled her head down toward his penis.
 R.D. managed to escape and took the bus home to her grandmother's house. While on the bus, R.D. took the rock out of her bra and put it in her purse. Once home, R.D. related what had occurred to her grandmother, Alice B. B. noticed a red mark on R.D.'s neck although she had not seen such a mark on R.D. that morning. B. took the rock from R.D. and placed it in a plastic bag. B. called the police. Officer Valerga of the Oakland Police Department responded and took possession of the bag containing the "crystal" rock. Officers cornered appellant, who ran from police and jumped onto a roof. During the standoff with officers, appellant smoked what appeared to be crack cocaine.
 Testing of the rock delivered by R.D. revealed it contained cocaine base. R.D.'s urine also tested positive for cocaine.
 At trial, a support person sat next to R.D. during her testimony. The support person was introduced at trial as a victim-witness advocate. Defense counsel made no objection. A sheriff's deputy sat behind appellant throughout the trial. Counsel objected to the placement of a deputy next to appellant on the witness stand.
 Appellant testified at trial, disputing the preceding facts. He claimed that R.D. went with him to his truck where he asked her for $80 and that she already had a hickey on her neck when she entered the vehicle. He denied smoking crack with her, giving her crack, pulling down his pants, sucking on her neck, or performing any lewd acts. About 30 minutes after R.D. left, appellant washed a car in the same location. While doing so, appellant was informed that R.D. had reported that he had sexually assaulted her. He called his sister and told her where he was. She arrived with R.D.'s mother and a man, and the three of them attacked appellant. As appellant ran, he saw police officers, but kept running because he was scared. He was so upset that he smoked some crack cocaine that he had purchased with the money he had received for washing the car. *Page 543 
 II. DISCUSSION A. The Trial Court Did Not Abuse Its Discretion in Permitting the Presence of an Armed Guard Behind Appellant While on the Witness Stand.
 An Alameda County deputy sheriff sat next to appellant while he testified, in accordance with the sheriff department's policy. Counsel objected to the placement of a deputy next to appellant on the witness stand. The court overruled counsel's objection, reasoning that the jurors would better focus on appellant's testimony if they were not concerned for their safety. In rendering its decision, the court noted that one juror had already expressed discomfort from an armed police officer sitting in the witness stand. Here, the court admonished the jury to disregard appellant's custodial status.
 On appeal, appellant contends that the presence of a sheriff's deputy sitting next to him while he testified "`brand[ed]'" appellant with "`an unmistakable mask of guilt.'" We are not persuaded.
 A trial court has broad discretion to maintain an orderly and secure courtroom. (People v. Hayes (1999) 21 Cal.4th 1211, 1269 [91 Cal.Rptr.2d 211, 989 P.2d 645].) Its decision regarding courtroom security measures is reviewed under an abuse of discretion standard. (People v. Ayala (2000) 23 Cal.4th 225, 253 [96 Cal.Rptr.2d 682,1 P.3d 3].) "Where necessary to assure an orderly trial, no denial of due process results from the mere presence of armed officers in the courtroom [citations]." (People v. Stabler (1962) 202 Cal.App.2d 862, 863-864
[21 Cal.Rptr. 120].)
 To support his claim, appellant incorrectly relies on the fact that he had committed no disruptions in the courtroom nor exhibited any violent behavior.[2] It is true that the imposition of physical restraints in the absence of violence or threats of violence constitutes an abuse of discretion. (People v. Mar (2002) 28 Cal.4th 1201, 1217 [124 Cal.Rptr.2d 161, 52 P.3d 95].) In this case, however, there was a deputy seated next to appellant on the witness stand. There were no physical restraints utilized against appellant. Additionally, courts have distinguished shackling from the presence of security *Page 544 
personnel and have indicated that unless officers are present in unreasonable numbers, their presence does not need to be justified by the court or the prosecutor. (People v. Duran (1976) 16 Cal.3d 282, 291 [127 Cal.Rptr. 618, 545 P.2d 1322] fn. 8.) Here, there was only one officer placed next to appellant during his testimony. Moreover, as explained in People v. Marks (2003) 31 Cal.4th 197, 223 [2 Cal.Rptr.3d 252, 72 P.3d 1222], "The Duran holding encompassed not only the standard positioning of officers but also their unusual deployment, as is shown by its citation to People v. David (1939) 12 Cal.2d 639, 644 [86 P.2d 811], where a deputy drew up his chair immediately behind where the defendant was sitting. (See Duran, at p. 291, fn. 8.)"
 The United States Supreme Court has refused to conclude that the deployment of security personnel in a courtroom during trial is an inherently prejudicial measure like shackling. (Holbrook v. Flynn (1986)475 U.S. 560, 568-569 [89 L.Ed.2d 525, 106 S.Ct. 1340].) The court stated that "[w]hile shackling [is an] unmistakable indication? of the need to separate a defendant from the community at large, . . . it is entirely possible that jurors will not infer anything at all from the presence of the guards." (Id. at p. 569.) In the immediate case, appellant presented no evidence that the jurors made negative inferences about him stemming from the presence of the guard.[3] Further, the trial court admonished the jury to disregard appellant's custodial status in making their decisions. The court's motivation in placing the deputy next to appellant during his testimony was to alleviate the concerns of the jurors with respect to their safety and thus avoid distraction. Alleviating distractions was done for the express purpose of ensuring that the jury would listen to appellant's testimony rather than being consumed by safety conc erns. Under these circumstances, the trial court did not abuse its discretion in following county policy in the deployment of a deputy during appellant's testimony.
 B. The Presence of a Support Person During the Victim's Testimony Did Not Infringe Appellant's Right of Confrontation.
 Appellant asserts that without a showing of necessity for the presence of a victim-support person while the victim testified, application of the statutory authorization for this procedure in the instant case was unconstitutional. Specifically, he maintains the procedure infringed his right of confrontation.
 Appellant has waived this claim of error by failing to object to the presence of the support person or request a hearing and determination of necessity. (People v. Lord (1994) 30 Cal.App.4th 1718, 1722 [36 Cal.Rptr.2d 453].) In any event, we do not agree with his contention. *Page 545 
 Section 868.5 authorizes a prosecuting witness in cases involving a violation of section 220 and other crimes, to select a support person who may accompany the witness to the witness stand. The statute does not require any case-specific showing that the witness needs or wants the support person, unless the support person is also a witness. (§ 868.5, subds. (a), (b).)[4] In the immediate case, the support person was asked to identify herself and her position, but did not testify for either side.
 Appellant relies on People v. Adams (1993) 19 Cal.App.4th 412 [23 Cal.Rptr.2d 512] (Adams), for the proposition that a showing of need was required to warrant the presence of a support person. Appellant's reliance on this case is not persuasive. In Adams the victim's support person was her father who also testified at trial. However, no showing of need was made. (Id. at pp. 434-435, 444.)
 The court in Adams first concluded that "[t]he procedure whereby the support person accompanies the witness at the stand is . . . not inherently prejudicial." (Adams, supra, 19 Cal.App.4th at p. 436.) "The presence of a support person at the stand does not necessarily rob an accused of dignity or brand him or her with an unmistakable mark of guilt. The presence of a second person at the stand does not require the jury to infer that the support person believes and endorses the witness's testimony, so it does not necessarily bolster the witness's testimony. Finally, the presence of a support person does not interfere with the decorum of the judicial proceedings. Consequently, in the absence of an articulable deleterious effect on the presumption of innocence, we must reject the contention that use of a support person at the stand deprives the defendant of a fair trial." (Id. at p. 437.)
 Second, although the Adams court concluded that the procedure permitting a witness to testify accompanied by a support person did implicate a defendant's confrontation rights, because it had an effect on the jury's observation of demeanor, it pointed out that not all such infringements are impermissible. (Adams, supra,19 Cal.App.4th at pp. 438-441.) Where, as here and in Adams, the witness is a minor, the state has a transcendent compelling interest in protecting the welfare of its children and the procedure designed to protect that interest as set forth in section 868.5 is narrowly drawn. (Adams, supra, at p. 442.) Nevertheless, the Adams court ruled there must be a case-specific showing of need for the support person procedure. (Id. at p. 444.) In arriving at this conclusion the court relied on Coyv. Iowa (1988) 487 U.S. 1012, 1021 [101 L.Ed.2d 857, 108 S.Ct. 2798] (such showing is required to justify allowing child to testify from behind a screen) *Page 546 
and Maryland v. Craig (1990) 497 U.S. 836, 855-856 [111 L.Ed.2d 666,110 S.Ct. 3157] (such showing is required to justify child's testimony via one-way closed circuit television).
 Craig enumerated the bundle of rights encompassed within a defendant's right of confrontation as (1) face-to-face confrontation; (2) oath; (3) cross-examination; and (4) observation by the jury of the witness's demeanor. (Maryland v. Craig, supra, 497 U.S. at pp. 845-846; People v.Johns (1997) 56 Cal.App.4th 550, 554 [65 Cal.Rptr.2d 434].) Here, only the factor of demeanor was involved, and that, not to a significant extent. Appellant complains that the fact that the supporter was introduced as a victim-witness advocate was prejudicial, because the main issue at trial was whether she was a victim. However, there is nothing in the record, and appellant has not pointed to anything, indicating that the supporter did anything by way of gesture, physical contact with the witness, facial expression or otherwise to convey that she was vouching for the witness's credibility as opposed to providing emotional support. Moreover, the supporter did not testify and thus she did not gain any additional importance in the eyes of the jury by virtue of being a witness. We therefore conclude appellant has not demonstrated prejudice from the employment of the support person procedure in this case, or that the absence of a showing of particularized need was fatal to the valid exercise of his confrontation rights. Moreover, the record supports an implied finding of need. R.D., who was 16 years old at the time, was confronting her father and recounting the assault to strangers at trial. Indeed, the jury found true the allegation that the victim was particularly vulnerable and appellant took advantage of a position of trust or confidence to commit the crime.
 C. The Evidence in This Case Was Not Removed from the Chain of Custody.
 Appellant contends that his drug convictions must be reversed because there is no substantial evidence to support the chain of custody of the crack cocaine. In other words, there was insufficient evidence from which the jury could reasonably conclude that the substance tested by the prosecution was the evidence that R.D.'s grandmother gave to Officer Valerga. The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. In making this determination, the reviewing court must view the evidence in a light most favorable to the People and presume in support of the judgment every fact the trier reasonably could deduce from the evidence. (People v.Barnes (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228,721 P.2d 110].) *Page 547 
 Officer Valerga received the cocaine from the grandmother but he did not testify. Thus appellant contends that the officer who did testify had no personal knowledge of the chain of evidence. This argument fails because Officer Valerga was not the only person with direct knowledge of the "chain of custody." R.D. testified that appellant had given her cocaine which she placed in her bra. Later she removed it to her purse. Once she returned home she removed the cocaine from her purse and gave it to her grandmother. The grandmother testified that she put the cocaine in a plastic bag and delivered it to Officer Valerga. Sergeant O'Rourke authenticated the narcotics envelope containing the evidence and that the envelope had been sealed by Officer Valerga. The grandmother confirmed that the bag in exhibit IB was the bag in which she placed the rock. The jury could reasonably infer from this evidence that the tested cocaine was the cocaine recovered by R.D.
 Appellant next asserts that even if the cocaine were given to Officer Valerga in the bag by the grandmother, Officer Valerga did not seal the bag until seven hours after the evidence was given to him. Gaps in the chain of custody do not automatically warrant suppression: "`While a perfect chain of custody is desirable, gaps will not result in the exclusion of the evidence, so long as the links offered connect the evidence with the case and raise no serious questions of tampering.'" (People v. Catlin (2001) 26 Cal.4th 81, 134 [109 Cal.Rptr.2d 31, 26 P.3d 357].) Appellant has offered no evidence of tampering, only speculation and innuendo. The trial court properly admitted the cocaine into evidence.
 D. Appellant's Sentence to the Upper Term on the Health and Safety Code Charge Was Justified.
 Appellant was sentenced to an aggravated term of nine years for furnishing a controlled substance to a minor (count 2). On appeal, he contends that the court erroneously imposed the upper term sentence for this offense because it relied on some aggravating factors that were not determined by the jury.
 Earlier this year in Cunningham v. California (2007) 549 U.S. ___ [166 L.Ed.2d 856, 127 S.Ct. 856], the United States Supreme Court struck down the upper term sentencing provisions of our determinate sentencing law: "Because the [determinate sentencing law] allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment." (Id. at p. ___ [127 S.Ct. at p. 876].) The high court also reiterated the bright-line rule that "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (Id. at p. ___ [127 S.Ct. at pp. 863-864].) This bright-line jury trial rule is subject to *Page 548 
a limited exception for the fact of a prior conviction. (Apprendi v. NewJersey (2000) 530 U.S. 466, 488-490 [147 L.Ed.2d 435, 120 S.Ct. 2348].)
 Our Supreme Court recently handed down its opinion in People v. Black
(2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130], on remand from the United States Supreme Court for reconsideration in light ofCunningham v. California, supra, 549 U.S. ___ [127 S.Ct. 856]. There, the court held that "so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth
Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury. . . . [¶] . . . Under California's determinate sentencing system, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term. [Citation.] Therefore, if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in Blakely, [5] the defendant is not `legally entitled' to the middle term sentence, and the upper term sentence is the `statutory maximum.'" (People v. Black, supra,41 Cal.4th at p. 813, fn. omitted.) Thus, the issue in each case, including the present case, "is whether the trial court's factfinding increased the sentence that otherwise could have been imposed, not whether it raised the sentence above that which otherwise would have been imposed." (Id. at p. 815.) Concluding, the Black court stated: "[I]mposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (Id. at p. 816.)
 Here the trial court stated that the most significant factor in imposing the upper term on count 2 was appellant's criminal record. That record included the following convictions: felony vehicle theft; evading a police officer; battery; spousal battery; carrying a loaded firearm; resisting and delaying a peace officer (two convictions); and contempt of court (two convictions). California Rules of Court, rule 4.421(b)(2) identifies as an aggravating circumstance the fact that "defendant's prior convictions . . . are numerous or of increasing seriousness." Appellant's prior convictions are *Page 549 
numerous. (People v. Black, supra, 41 Cal.4th at pp. 818-819.) Moreover, a defendant does not have a right to a jury trial on whether such convictions are numerous or increasingly serious. (Id. at pp. 819-820.) In addition to the prior convictions, the court noted that appellant was on felony probation at the time of commission of the present offences.
 The court also cited certain factors found by the jury beyond a reasonable doubt in the bifurcated proceeding, namely (1) the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)); (2) appellant took advantage of a position of trust/confidence, using his position as the victim's father to coerce her into the vehicle (id., rule 4.421(a)(11)); and (3) appellant was the natural parent, adoptive parent, stepparent or foster parent of the minor (§ 1170.76).
 In light of Black, it is clear that appellant's constitutional right to a jury trial was not violated by the lower court's imposition of the upper term sentence on count 2. His criminal history and the jury's findings concerning victim vulnerability and taking advantage of a position of trust based on the parental relationship are three aggravating circumstances, each of which satisfies Sixth Amendment requirements and rendered appellant eligible for the upper term.
 III. DISPOSITION The judgment is affirmed.
 Sepulveda, J., concurred.
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] Of course, appellant was charged with a serious sexual assault which constituted a "violent felony" within section 667.5, subdivision (c)(15). He was in custody; fled when confronted by police at the time of his arrest (although he presented a different version); and had an extensive criminal record (see pt. II.D., post, at p. 548). As well, during colloquy on the issue of the presence of the guard, the prosecutor noted that appellant had been "outwardly agitated . . . in front of other deputies. . . . [I]t was submitted one of the jurors noting his agitation and his motions and irritability. . . ." Later it was clarified that the juror was distracted by appellant's actions, but did not feel afraid or threatened by him.
[3] No effort was made by defense counsel to file juror declarations in support of a motion for new trial on the effect, if any, of the deputy's presence.
[4] Where the support person is also a prosecuting witness, "the prosecution shall present evidence that the person's attendance is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness." (§ 868.5, subd. (b).)
[5] This reference is to Blakely v. Washington (2004) 542 U.S. 296, 303
[159 L.Ed.2d 403, 124 S.Ct. 2531], which defines the "statutory maximum" for purposes of Apprendi's bright-line rule as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the juryverdict or admitted by the defendant." Thus, "the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts." (Blakely v. Washington, supra, 542 U.S. at pp. 303-304.)